VICTORIA BASAK *vs.* JOHN DAMUTZ ET AL.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES AND HINMAN, Js.

One who permits the record title of his real estate to stand in the name of another, is not thereafter estopped to assert his ownership against the other's creditors unless the creditors have been in some way misled or deceived by the owner's act and have relied upon the apparent title, and unless they have themselves exercised good faith and due diligence in endeavoring to ascertain the truth.

Basak *v.* Damutz.

The office of an equitable estoppel is not to support some strict rule of law, but to show what equity and good conscience require under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties.

When the defendant's wife in the present case became surety upon an appearance bond executed in favor of the plaintiff in a bastardy action then pending, she held the record title to her husband's farm which he had conveyed to her about four years before upon the understanding that if he did not survive an operation which he was about to undergo, the property should be hers, otherwise not. The wife, who spoke little English and wrote none, made no representations to the plaintiff, and the plaintiff made no inquiries of the wife, concerning the ownership of the farm, and it did not appear that the plaintiff or her attorney knew the state of the record title. As soon as the husband learned of the execution of the bond, he notified the plaintiff's attorneys that the farm was his and demanded the release of the bond, and though they promised to take care of the matter, nothing was done and the bastardy action was prosecuted so slowly that, when it was tried, the accused had fled the jurisdiction. *Held* that under these circumstances the husband was entitled to assert his real ownership of the farm as against the plaintiff.

Argued October 28th—decided December 16th, 1926.

ACTION to set aside an alleged fraudulent conveyance of real estate, and for damages, brought to the Court of Common Pleas for New Haven County and tried to the court, *Pickett, J.;* judgment for the defendants, and appeal by the plaintiff. *No error.*

*Franklin Coeller,* for the appellant (plaintiff).

*Daniel D. Morgan,* with whom, on the brief, was *Philip Pond,* for the appellees (defendants).

HAINES, J. There appears to be no dispute as to the essential facts of this case, and no exceptions to the finding are taken. The complaint is in three counts and the relief sought is the cancellation of a certain specified deed from one of the defendants to the other, and the removal of the record from the town clerk's

books at North Branford, and for damages. The case therefore turns upon the construction the law will put upon the established facts.

The first count is clearly not sufficient to furnish the relief sought in the first prayer, as it contains no specific reference to the transfer sought to be set aside. The sufficiency of both the first and second counts, as a basis for damages, is dependent upon whether the defendant Julia Damutz had any property of her own at the time of the claimed fraudulent conveyance, or was estopped under the circumstances of the case from denying that she had property. The sufficiency of the third count depends on whether the transfer made by Julia Damutz to John Damutz was fraudulent, without consideration and void.

The controlling facts are that on October 23d, 1923, one Yorosky was arrested at the instance of the present plaintiff, for bastardy, and bound over to the Court of Common Pleas for New Haven County under a bond for $1,000 for his appearance. He was from that time until about September 1st, 1924, represented by attorney Shelnitz. On the day Yorosky was bound over, the defendant Julia was taken by Yorosky to the office of attorney Shelnitz, and with Yorosky as principal, executed the bond for $1,000 for his appearance. No one was present representing the plaintiff. It does not appear that the defendant Julia made any representations at that time as to her interest in or ownership' of the property in question. She speaks little English and cannot write it at all.

At the time she executed the bond, she had no property of any kind, though the record title to the real estate in question stood in her name. This was a farm which had been substituted for certain other real estate owned by John, her husband, which he had conveyed to her in 1919, because of an impending serious opera-

tion on his part, with the understanding and upon her agreement that if he did not survive the operation the property would be hers, otherwise not. The deeds required for these transfers were all acknowledged before attorney Shelnitz, who was familiar with the history of the transaction. When the bond was signed the defendant John was away from home. He returned in a few days and learned that his wife had signed this bond and at once looked up Yorosky. Upon learning from him that attorney Quinn represented the plaintiff, he immediately went to him and informed him that the bond was "no good," that his wife, the defendant Julia, owned no property, but that the farm belonged to himself, and insisted upon having the bond released. Attorney Quinn told him that he would take care of the matter and that it would be all right, but in fact he did nothing. The defendant John continued his effort to obtain the release until September, 1924, interviewing the plaintiff as well as several attorneys, and repeating his claim that his wife had no property and that she had signed the bond without his knowledge or consent. The bastard child was born in January, 1924, but no action was taken in the bastardy case by amendment of the pleadings, although Yorosky remained within the jurisdiction. In September, 1924, the defendant John took the plaintiff to attorney Coeller, who was then retained to press the bastardy action, and at a later date, the defendant John gave the plaintiff $50 to pay attorney Coeller. Yorosky had in the meantime gone out of the jurisdiction, and though the defendant John asked the plaintiff to write to him to return, she refused to do so. Attorney Coeller promptly proceeded with the bastardy action, and judgment for the plaintiff was entered January 5th, 1925, by default. In another action, judgment was entered for the plaintiff against

the defendant Julia on the bond in question, January 23d, 1925. No execution was issued, but on August 17th, 1925, the plaintiff instituted the present action. In this action the body of the defendant Julia was attached August 18th, 1925, and she was committed to jail, where she remained until released on special bail October 15th, 1925. At the time the bastardy action was instituted, another action for debt was brought by the plaintiff against Yorosky, in settlement of which Yorosky assigned all his property to the plaintiff. The finding further shows that when the bond was delivered to the plaintiff's attorney, neither he nor the plaintiff, then nor at any time before, knew or had any reason to believe that the defendant Julia owned the property in question, nor does it appear that they knew that she held the record title of this farm. It is apparent from the finding that neither the plaintiff nor her attorney relied upon the defendant Julia's title to the farm, when the bond was taken.

The fact is found and is not challenged, that the farm was at all times the property of the defendant John, and that the defendant Julia never owned it. Since the first two counts are based upon the allegation that Julia had property and estate and the third count that this farm was her property and estate, there can be no recovery in this action unless there exists an estoppel *in pais*. The facts must be such that Julia and John, one or both, are equitably estopped to deny the defendant Julia's ownership which the record title suggests. This again can only come about in case there has been, either affirmatively or by silence when they should have spoken, some concealment, act or misrepresentation upon which the present plaintiff relied to her detriment. An estoppel is not favored, and fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise and un-

Basak *v.* Damutz.

equivocal, and more particularly so where real-estate titles are involved. "As a general rule . . . it must appear that the person sought to be estopped has made a representation or concealment of material facts inconsistent with . . . the title he proposes to set up." 11 Amer. & Eng. Ency. of Law (2d Ed.) p. 421 *et seq.* The claim of estoppel may be invoked to protect creditors who have given credit on the face of the apparent ownership of the property in the possession of the debtor, as where the debtor holds himself out as owner and obtains credit upon this ground, either by claiming ownership or by keeping silent when he should have spoken. *Lengyel* v. *Peregrin,* 104 Conn. 285, 132 Atl. 459; *Mangusi* v. *Vigiliotti,* 104 Conn. 291, 132 Atl. 464.

In the present case, no act, promise or representation of this character was made by either defendant. Whether the silence of either of them was wrongful, depends upon the further question whether the plaintiff was in any way misled or deceived to her detriment. *Shaw* v. *Jackson,* 92 Conn. 345, 102 Atl. 736. So far as the record discloses, neither the plaintiff nor her attorney knew that the title to this farm was held by Julia when she gave the bond. There is nothing to show that they had any reason to suppose that she owned the farm. They did not accept the bond, therefore, upon the strength of her apparent ownership. If the plaintiff was never in any way misled or deceived by the defendant and never relied upon Julia's apparent ownership, the doctrine of equitable estoppel has no application. It follows that neither defendant is precluded from establishing the ownership of John Damutz. *Bushnell* v. *Church,* 15 Conn. 406, 420; *Whitaker* v. *Williams,* 20 Conn. 98; *Townsend Savings Bank* v. *Todd,* 47 Conn. 190; *Starkweather* v. *Goodman,* 48 Conn. 101, 105.

Where it does not appear that the creditor was mis-

led to his prejudice by anything done or omitted by the debtor, an essential element of estoppel is lacking. *Ætna National Bank* v. *Hollister,* 55 Conn. 188, 213, 10 Atl. 550. Moreover, it is incumbent upon the creditor to show that he himself exercised good faith and due diligence in endeavoring to ascertain the truth. *Morgan* v. *Farrel,* 58 Conn. 413, 427, 20 Atl. 614.

The office of an estoppel is "not to support some strict rule of law, but to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties." *Canfield* v. *Gregory,* 66 Conn. 9, 17, 33 Atl. 536.

Counsel for the plaintiff, in brief and argument, rest upon *Goldberg* v. *Parker,* 87 Conn. 99, 87 Atl. 555. An examination of that case will show that its analogy to the present case fails for the very same reason above referred to, namely, that in that case the creditors justifiably relied upon the apparent ownership of the property in question, and an estoppel arose. This plaintiff has not established any facts to show that she or her attorney ever knew, or took any steps to ascertain, whether Julia Damutz owned this or any other property. It follows of necessity that this farm was never relied upon by them as a ground for the acceptance of the bond.

The plaintiff's contentions as disclosed by the brief and argument, while they invoke for the most part principles of law which are undoubtedly sound, are based throughout upon defective premises. One of these is that this farm was the property of Julia Damutz, and the other is that the plaintiff is an innocent creditor who has been misled by the defendants. The finding effectively negatives both of these claims and the plaintiff's argument fails for that reason. One claim of law in the brief is not supported by the au-

thorities cited and is clearly unsound, namely, that "the conduct of John Damutz in allowing his wife to take the title in her sole name, estopped him from ever after making claim to such property as against a creditor of his wife." This court stated in *Goldberg* v. *Parker,* *supra,* p. 105: "The act of the real owner in placing the record title of property in the name of another precludes her from denying his title as against one *who has extended a credit in reliance upon the title* which she has vested in the other." See also *Baldwin* v. *Porter,* 12 Conn. 479, 482.

This is a claim in a court of equity and the conduct of the plaintiff is subject to scrutiny, since he who claims equity must do equity. Before the plaintiff can appropriate the property of John Damutz, she must be able to show that her own course toward him has been equitable. The finding shows that John Damutz acted with the utmost promptitude and frankness, going both to the plaintiff herself and to her attorney and explaining the whole situation to them and even taking the plaintiff to a lawyer to further her claims against Yorosky and advancing her money with which to pay him. Upon learning what the true situation was, her attorney promised John Damutz that he would attend to the matter of obtaining the release of the bond and that it would be all right, but in fact he did nothing. At this time and for a considerable time afterward the presence of Yorosky within the jurisdiction made it possible for the plaintiff to protect herself against the loss she now claims to have suffered, but again nothing was done. As between John Damutz and the plaintiff, the equities of this case clearly predominate in favor of the former. We concur in the view expressed by the trial court: "On the whole, there seems little equity in favor of one who accepts a bond without investigation of the surety, denudes

the principal of his assets, and remains supine and indifferent when seasonably warned that the bail is 'no good,' as against one who was throughout innocent of fraudulent intent, ignorant that the bond was to be given, active according to his lights to reveal the truth and save all innocent parties harmless, but unsuccessful because of the laches or indifference of that one who now appeals to equity."

There is no error.

In this opinion the other judges concurred.