PAUL PANICALI *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued April 5—decided May 10, 1960

*Alphonse C. Jachimczyk*, assistant attorney general, for the appellant (defendant).

*Vincent M. Simko*, for the appellee (plaintiff).

*Norman Zolot*, with whom, on the brief, was *Margaret C. Driscoll*, as amicus curiae.

KING, J. The plaintiff operated a small restaurant and bar in Bridgeport in which seven persons were employed. They consisted of two bartenders, who were the plaintiff's brother and Alex Kasmin; three kitchen helpers, who were the plaintiff's father and two women; and two waitresses, who were the plaintiff's mother and sister. Sometime before June 25, 1956, the Hotel and Restaurant Employees and Bartenders International Union, Local No. 288, A.F.L.-

C.I.O., hereinafter referred to as the union, held a meeting at which it decided to try to obtain collective bargaining contracts for all businesses in Bridgeport like that of the plaintiff. Kasmin, who had belonged to the union for about eleven years, attended the meeting. On June 25, the union sent the plaintiff a proposed contract designating the union as the exclusive agent for collective bargaining. Although the union intended the contract to cover bartenders only, by mistake it was so worded as to cover all of the plaintiff's employees. After discovery of the error, the union sent the plaintiff another contract, covering bartenders only. The plaintiff failed to sign the contract, and the union, after further discussion with him, filed charges with the state board of labor relations, the defendant, hereinafter referred to as the board, claiming that the plaintiff had committed an unfair labor practice, under what is now General Statutes § 31-105 (6),[1] in refusing to bargain collectively with the representative of his employees. The board concluded, after a hearing, that although, ordinarily, all of the bartenders would constitute the appropriate bargaining unit under General Statutes § 31-106 (a), which deals with the election of representatives for the purposes of collective bargaining, here the plaintiff's brother should be excluded because of his close relationship to the plaintiff, that is, the employer. In our view of this case, we are not called upon to review this conclusion, which left Kasmin as the sole member of the bargaining unit as determined by the board.

---

[1] "Sec. 31-105. UNFAIR LABOR PRACTICES. It shall be an unfair labor practice for an employer: . . . (6) to refuse to bargain collectively with the representatives of employees, subject to the provisions of . . . section 31-106; . . . ."

The board sustained the union's claim of an unfair labor practice under § 31-105 (6), and ordered relief which was appropriate, under its findings, to carry out the policies of our Labor Relations Act. The plaintiff appealed to the Superior Court, which sustained the appeal on a number of grounds and set aside the order. From the judgment, the board took this appeal.

Section 31-105 (6) is in express terms made subject to the provisions of § 31-106. Thus, an unfair labor practice under § 31-105 (6) is not a refusal upon the part of an employer to bargain collectively with a union which claims that it is the representative of his employees but a refusal so to bargain with a union which in fact is such a representative, that is, a union which has been, in the words of § 31-106 (a), "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes or by the majority of the employees voting in an election conducted pursuant to this section." See *Lavery's Main St. Grill, Inc.* v. *Hotel Employees Union,* 146 Conn. 93, 97, 147 A.2d 902. Since the board had held that the appropriate bargaining unit consisted of Kasmin, alone, its decision that the plaintiff had committed an unfair labor practice could stand only if the union had been "designated or selected for the purposes of collective bargaining" by Kasmin. "[A]n employer acting in good faith may refuse to negotiate with a union until it can be determined whether the union desiring recognition actually represents [as a collective bargaining agent] a majority of the employees [in an appropriate bargaining unit]." *National Labor Relations Board* v. *Knickerbocker Plastic Co.,* 218 F.2d 917, 922; see *Pittsburgh Plate Glass Co.* v. *National La-*

*bor Relations Board,* 313 U.S. 146, 152, 61 S. Ct. 908, 85 L. Ed. 1251. Although the union had Kasmin alone with whom to deal, it either could not obtain or did not attempt to obtain from him a written designation as his bargaining agent. In *National Labor Relations Board* v. *Chicago Apparatus Co.,* 116 F.2d 753, 756, and *National Labor Relations Board* v. *Howell Chevrolet Co.,* 204 F.2d 79, 83, cases cited and relied upon by the defendant, such a written designation had been obtained.

Kasmin testified that he had not wanted the union to do his bargaining for him, that he wished to continue to do it for himself, and that he had so informed the witness Snyder, business agent of the union, prior to the mailing to the plaintiff of the first proposed contract. Snyder denied that Kasmin had at any time told him that he did not want the union to be his bargaining agent. The board accepted Snyder's testimony and rejected that of Kasmin as unworthy of credit. It did not, however, find that Kasmin, by any affirmative speech or action, had designated or selected the union as his bargaining agent, although it did find that he had kept up his union dues, $30 a year, during the attempted negotiations between the union and the plaintiff. Of course, the failure of the board to believe Kasmin's testimony that he did not want it to represent him did not authorize an affirmative finding to the contrary. *State* v. *Poplowski,* 104 Conn. 493, 495, 133 A. 671; *Walkinshaw* v. *O'Brien,* 130 Conn. 151, 153, 32 A.2d 639.

The board's finding that Kasmin had designated and selected the union as his collective bargaining representative flowed from the fact that the board held that "[t]he principal purpose and function of a union is collective bargaining. It is a generally

known fact that employees join a union for the purpose of obtaining the benefits of collective bargaining over wages, hours and other conditions of employment. Voluntary membership in a union is of itself a sufficient designation of the union as bargaining representative at least and until the member makes it clear to the union that he does not want it to represent him." Whether this would be a correct rule to apply to a union member working under a contract which had been negotiated by the union, or accepting employment under such a contract, we need not inquire, since such facts are absent from this case. Here, according to the board's own finding, Kasmin had been a member of the union, apparently in good standing, for over a decade, and was working under a contract, in so far as he had any contract, which he himself had negotiated with the plaintiff. The union had had nothing to do with Kasmin's contract of employment. As far as appears, it had not previously attempted to negotiate a contract with the plaintiff. Indeed, there is nothing to indicate that Kasmin, during all of his years of union membership, had ever worked under a contract negotiated by any union. On this record, it is unreasonable to hold that he is presumed to have joined the union and maintained his union membership through the years for the purpose of obtaining the benefits of the union as his collective bargaining representative. Nor is there anything in § 31-106 warranting a construction that he was required to terminate his long-standing union membership to avoid a legal presumption that he had designated the union as his representative. Union membership is one thing; designation of the union as the employees' bargaining agent is quite another.

The board seems to claim that unless the plaintiff

specifically based his failure to negotiate on the ground that the union had not been designated by Kasmin as his bargaining agent, the union necessarily was his bargaining agent. In support of this proposition, the board cites *National Labor Relations Board* v. *Howell Chevrolet Co.*, supra, 85, and *National Labor Relations Board* v. *Armco Drainage & Metal Products, Inc.*, 220 F.2d 573, 576. We do not so interpret these cases. In each, there was a finding that the employer, in questioning whether the union had been properly designated, had not acted in good faith, and that his refusal to bargain was motivated by antiunion bias and hostility. Here, there was no evidence that Kasmin had designated the union his bargaining agent nor that the plaintiff actually believed, or had any reasonable ground for affirmatively believing, that Kasmin had so designated the union. Thus, there was no basis for a finding that the plaintiff, in refusing to admit that Kasmin had so designated the union, had not acted in good faith but was actually motivated by antiunion bias or hostility.

It is hardly necessary to point out that we are not concerned with any loss, by the union, of status as Kasmin's bargaining agent. See cases such as *National Labor Relations Board* v. *Bradford Dyeing Assn.*, 310 U.S. 318, 339, 60 S. Ct. 918, 84 L. Ed. 1226, and *Franks Bros. Co.* v. *National Labor Relations Board,* 321 U.S. 702, 705, 64 S. Ct. 817, 88 L. Ed. 1020. We are concerned with whether the union ever acquired any such status.

Since there was no evidence from which the board could find that Kasmin had ever designated or selected the union as his bargaining representative, the finding of the board that he had so designated it is without support, and the conclusion of the board

that the plaintiff had committed an unfair labor practice under § 31-105 (6) must fall. On this ground alone, there was no error in the judgment setting the order of the board aside in toto. This conclusion makes it unnecessary to consider the board's other assignments of error.

There is no error.

In this opinion the other judges concurred.