AELINE CONSOLE *v.* NICKOLAS NICKOU

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued February 8—decided March 20, 1968

*Morris Tyler,* for the appellant (defendant).

*Thomas D. Clifford,* for the appellee (plaintiff).

RYAN, J. This is a malpractice action against the defendant, a physician, in which the plaintiff alleged that the defendant negligently left a suture needle

in her body when he delivered her of a child on March 1, 1959. A second count sounding in contract was abandoned by the plaintiff. At the conclusion of the evidence, the defendant moved for a directed verdict, which the trial court denied. The jury were unable to reach a verdict, and the defendant, pursuant to Practice Book § 255, moved for a judgment notwithstanding the jury's failure to return a verdict. Upon the denial of this motion, the defendant appealed to this court. Practice Book § 600.

The defendant's sole assignment of error is predicated on the denial by the trial court of the defendant's motion for judgment notwithstanding the jury's failure to return a verdict, on the ground that "there was no evidence based upon expert testimony from which the jury could have found that the defendant was negligent or that his negligence was the proximate cause of the injuries claimed." Directed verdicts are not favored and should be granted only when the jury could not reasonably and legally reach any other conclusion. *Johnson* v. *Consolidated Industries, Inc.,* 153 Conn. 522, 524, 218 A.2d 380; *Santor* v. *Balnis,* 151 Conn. 434, 435, 199 A.2d 2. We must review the action of the trial court in the light of the evidence most favorable to the plaintiff. *Johnson* v. *Consolidated Industries, Inc.,* supra; *Blados* v. *Blados,* 151 Conn. 391, 393, 198 A.2d 213; *Snyder* v. *Pantaleo,* 143 Conn. 290, 295, 122 A.2d 21.

The jury could reasonably and logically have found the following facts: The plaintiff has three children. The first child was born November 23, 1951, the second, on March 13, 1956, and the third, on March 1, 1959. Dr. M. L. Berlowe delivered the first child. The plaintiff was aware of no pain in the course of the delivery and had a normal recovery.

She experienced no pain or discomfort in the perineal area after the birth of this child. During the period between the births of her first and second children, she saw Dr. Richard L. Rosenthal, her family physician. She made no complaint to him of any pain, nor did she experience pain during the internal examination by him prior to the birth of her second child. This baby was delivered by a staff physician at the New Haven Hospital clinic. She had a normal recovery after the birth of the second child, made no complaint of pain in the perineal area and consulted no physician concerning any such pain.

The plaintiff first consulted the defendant in September, 1958, when she was pregnant with her third child. During the defendant's internal examination of her, she experienced no pain in the perineal area. The plaintiff's medical history as recorded in the hospital record indicated that her previous pregnancies were normal and that there were no complications resulting from them. She continued to see the defendant about once a month until the birth of the third child on March 1, 1959. During the delivery of this child the plaintiff was awake and knew that the defendant was in the delivery room. She felt him cut her when he was performing an episiotomy for the purpose of facilitating the delivery of the baby. After the child was delivered, the plaintiff was aware that the defendant repaired the episiotomy by suturing. The defendant, in performing the episiotomy, made an incision mediolaterally, which is at a forty-five degree angle from the vagina away from the rectum going toward the back of the right leg. This incision followed the old episiotomy scar incurred during earlier deliveries. Because of the prior births, only a small incision

was required. In repairing the episiotomy, the defendant used a curved needle into which was crimped a length of gut about twenty-seven inches long. While in the hospital, the plaintiff complained of pain in the area of the sutures, and she was given drugs for pain on each of the four days she was there. The defendant did not examine the sutures at any time while the plaintiff was in the hospital. The first night she was home she telephoned the defendant and complained of the pain. Two days later she again called the defendant and complained of pain in the perineal area. He told her to take a couple of aspirin tablets. Between the time when she was discharged from the hospital and her examination six weeks thereafter, she experienced what she described as "an intense jagged momentary pain; sometimes it would last a half a minute and it would just come and leave." The discomfort was so great that she told the defendant that she believed there was something wrong in the perineal area. At the time of this examination the defendant took no x rays. In June, three months after the delivery, when the plaintiff again complained of pain, the defendant told her to go home and soak the area in hot water. She telephoned or saw the defendant six or seven times, still complaining of pain, until finally the defendant refused to see her.

The plaintiff then went to see Dr. Rosenthal and informed him of her symptoms. He examined her and by subsequent treatment healed the wound in the perineum, but the intense pain continued. On one occasion, the pain was so intense that she was obliged to sit on the floor and was unable to get up. She went to see Dr. Rosenthal, and, as she got on the table for examination, she said it felt as if a nerve were "sticking out and moving and jumping."

One attack during that summer was so severe that she almost drowned while swimming. The plaintiff also saw several other physicians, concerning the pain, one of whom was Dr. Abraham Markoff. Dr. Markoff found that the plaintiff had hemorrhoids which would have caused some pain, but such a pain would not be described as a sudden, shooting, jagged, sharp pain unless she had a fissure. The plaintiff did not have a fissure. Dr. Markoff scheduled her for hospitalization for surgery for the hemorrhoids, but on June 6, 1960, the plaintiff went to Dr. Rosenthal, complaining of a hard object in her thigh, and he removed a suture needle from the inner right thigh about two inches from the vagina. Thereafter the plaintiff no longer complained of pain in that area, and Dr. Markoff canceled the plaintiff's hospital reservation. When the defendant repaired the episiotomy in the hospital, no needle count or check was conducted in the delivery room. The suture needle used by the defendant was the same type as the one removed from the plaintiff by Dr. Rosenthal.

The defendant, in his assignment of error, claims that there was a complete absence of any expert testimony from which the jury could find negligence on the part of the defendant. When the plaintiff called the defendant as a witness, he testified on direct examination that, in the exercise of reasonable standards of care and skill of general practitioners in the region, one should not leave a suture needle within the patient's body in the course of repairing an episiotomy and that the standards of reasonable care prevailing among general practitioners delivering babies in New Haven would be violated if this occurred. Under our rule, the plaintiff cannot prevail unless there was positive evidence of an expert nature from which the jury could

reasonably and logically conclude that the defendant was negligent, except where there is manifest such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence that the testimony of an expert is not necessary. *Snyder* v. *Pantaleo,* 143 Conn. 290, 292, 122 A.2d 21; *Ardoline* v. *Keegan,* 140 Conn. 552, 557, 102 A.2d 352; *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 A. 153. The plaintiff does not claim that the present case fell within the exception to the rule, and there was expert testimony from which the jury could have found the defendant negligent. The defendant himself, a qualified expert, provided evidence which was clearly sufficient to support a verdict under the rule enunciated in *Slimak* v. *Foster,* supra, 370, and followed in *Allen* v. *Giuliano,* 144 Conn. 573, 575, 135 A.2d 904, and *Snyder* v. *Pantaleo,* supra, 294.

The defendant makes the further claim that there was no expert testimony to establish how long the needle was in the plaintiff's body and that lay persons are not competent to determine whether a needle, the location of which was unknown until its appearance fifteen months after the latest date to which its presence within the body of the plaintiff could be attributable, was the cause of her complaints and pain. "While the standard of care, skill and diligence is a matter of expert opinion and knowledge, the determination of the facts concerning the conduct under consideration is always for the jury." *Snyder* v. *Pantaleo,* supra, 295. It is undisputed that at the time of the births of the plaintiff's first and second children, in 1951 and 1956 respectively, episiotomies were performed, each of which required repair by suturing. There was evidence that the plaintiff had a normal recovery after both of these deliveries and that she had no pain or

other symptoms relating to the perineal area following these procedures. There was evidence that she suffered intense pain in that area immediately following the delivery of her third child which persisted until the removal, some fifteen months later, of a surgical needle of the same type used by the defendant. Following the removal of the needle the pain ceased. This evidence, while circumstantial in nature, with inferences drawn most favorably to the plaintiff, would reasonably and logically support a finding by the jury that the defendant left the needle in the plaintiff and that the discomfort and pain complained of by her were caused by this needle. "The test of the sufficiency of proof by circumstantial evidence is whether rational minds could reasonably and logically draw the inference. *Andrea* v. *New York, N.H. & H.R. Co.,* 144 Conn. 340, 344, 131 A.2d 642; *Pierce* v. *Albanese,* 144 Conn. 241, 256, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21. The proof need not be so conclusive that it precludes every other hypothesis. It is sufficient if the proof produces in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact to be inferred is true. *Hennessey* v. *Hennessey,* . . . [145 Conn. 211, 214, 140 A.2d 473]; *Pierce* v. *Albanese,* supra; *Dickson* v. *Yale University,* 141 Conn. 250, 253, 105 A.2d 463, and cases cited." *Cayer* v. *Salvatore,* 150 Conn. 361, 364, 189 A.2d 505.

The evidence was sufficient to warrant the submission of the case to the jury, and the trial court was correct in denying the defendant's motion for judgment notwithstanding the jury's failure to return a verdict.

There is no error.

In this opinion the other judges concurred.