## Victoria Puro *v.* Philip Henry et al.

Speziale, C. J., Parskey, Armentano, Shea and Sponzo, Js.

Argued May 4—decision released September 7, 1982

*Edward M. Sheehy,* for the appellant (named defendant).

*Gregory C. Willis,* for the appellant (defendant Griffin Hospital).

*Michael P. Koskoff,* with whom was *Brenda C. Morrissey,* for the appellee (plaintiff).

PARSKEY, J. This action was brought by the plaintiff Victoria Puro to recover damages against Philip Henry, a surgeon, and Griffin Hospital for alleged medical malpractice to which the defendants interposed the special defense of the statute of limitations.[1] In her amended reply the plaintiff alleged that the defendants had fraudulently concealed the existence of a surgical needle in the plaintiff. At the time of trial the complaint sounded in one count each of negligence and breach of contract against Henry and in one count of negligence against Griffin Hospital.[2] After a trial to the jury

---

[1] At the time of the plaintiff's injury General Statutes § 52-584 provided as follows: "LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within one year from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[2] The defendant Philip Henry's demurrer to a count sounding in res ipsa loquitur was sustained by the court. The court rendered judgment for Henry on this count after the plaintiff failed to plead over.

the court directed a verdict for the defendant Henry on the breach of contract count. The jury was unable to reach a verdict against either defendant. Thereafter, the court denied the defendant's motions for a directed verdict and ordered a new trial.

The defendants' assignments of error are predicated on the denial by the trial court of their motions for judgment notwithstanding the jury's failure to return a verdict. The defendants claim (1) that the plaintiff failed to produce expert medical testimony that either defendant committed malpractice and (2) that the plaintiff's cause of action was barred by the statute of limitations because the plaintiff failed to produce expert medical evidence that either defendant fraudulently concealed the existence of a surgical needle in the plaintiff.

We find both claims to be without merit.

"Directed verdicts are not favored and should be granted only when the jury could not reasonably and legally reach any other conclusion. . . . We must review the action of the trial court in the light of the evidence most favorable to the plaintiff." (Citations omitted.) *Console* v. *Nickou*, 156 Conn. 268, 270, 240 A.2d 895 (1968).

The jury could reasonably and logically have found the following facts: In 1963, the plaintiff, Victoria Puro, consulted the defendant Philip Henry, a general surgeon, about abdominal problems she was suffering. Henry sent the plaintiff for x-rays to the Radiology Group which was located down the hall from Henry's office in Derby. Henry diagnosed gall bladder disease and recom-

mended surgery. Thereafter, on September 9, 1963, Henry performed a cholecystectomy and appendectomy on the plaintiff at the defendant Griffin Hospital located in Derby (hereinafter the hospital).

Following her discharge the plaintiff remained in Henry's care. Recurring hernias in the area of the original operation necessitated surgery in June, 1964 and September, 1965. These operations were performed by Henry at the hospital. Thereafter, on May 18, 1967, the plaintiff was readmitted to the hospital by Henry for the surgical repair of another ventral hernia. In this procedure Henry inserted nylon mesh to reinforce the wound utilizing catgut, wire, and nylon sutures. Henry conceded that there was no surgical needle in the plaintiff's abdomen prior to this operation.

Subsequently, the plaintiff began to experience severe pain in her abdomen, particularly if she bent, stretched or twisted. The plaintiff informed Henry of these complaints during her visits. In October, 1969, the plaintiff, complaining of back and abdominal pain, consulted Henry who dispatched her for x-rays to the same Radiology Group she had previously visited. The x-ray report prepared by Carl Pantaleo, president and chairman of the Radiology Group and long time friend of Henry disclosed only the presence of "radiopaque sutures in the [plaintiff's] upper abdomen." On the plaintiff's return, Henry informed her that she had an enlarged womb but did not mention any foreign substances in her abdomen. From 1969 to October, 1972 the plaintiff, continually complaining of abdominal pain, remained in Henry's care. No further surgery was performed during this period.

Thereafter, the plaintiff terminated her relationship with Henry and sought out Edward Harvey, a general practitioner in Seymour, for treatment of her abdominal troubles. Harvey sent the plaintiff to the same Radiology Group that Henry had utilized. The x-ray report dated October 16, 1972 and prepared by Pantaleo disclosed the presence a "[l]inear, radiopaque needle-like foreign body" measuring three centimeters in length in the plaintiff's abdominal wall. To confirm this, Harvey performed an x-ray at his own office and concluded that there was a broken surgical needle in the plaintiff. The plaintiff was subsequently informed of this fact.

In January, 1973, Stewart Petrie, a gynecologist practicing in Derby tried unsuccessfully to remove the needle in the course of a hysterectomy. Ultimately, Joseph Dineen, Chief of Surgery at Griffin Hospital surgically removed from the plaintiff three fragments of what appeared to be a stainless steel needle.

The present action was commenced on May 10, 1974.

The defendants in their assignment of error claim that there was an absence of any expert testimony from which the jury could find negligence on the part of the defendants for leaving a needle in the plaintiff. It is well settled that the plaintiff cannot prevail unless there was positive evidence of an expert nature from which the jury could reasonably conclude that the defendant was negligent, except where there is manifest such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence that the testimony of an expert is not necessary. *Console* v. *Nickou,* supra,

273–74; *Snyder* v. *Pantaleo,* 143 Conn. 290, 292, 122 A.2d 21 (1956); *Ardoline* v. *Keegan,* 140 Conn. 552, 556–57, 102 A.2d 352 (1954); *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 A. 153 (1927).

At trial, the plaintiff adduced testimony from five doctors, including Henry, as expert witnesses. Henry, when called by the plaintiff, testified that it was possible for a surgeon using reasonable care to leave a needle in a patient if there were extenuating circumstances. Henry, however, conceded that there were no extenuating circumstances present during the May, 1967 operation. Dineen and Petrie also testified that absent complications or an emergency, a surgeon would not leave a needle in a patient's abdomen. Pantaleo testified that needles are not normally left in a patient's abdomen. Charles Verstandig, a surgeon and radiologist from New Haven, was also called as an expert witness by the plaintiff. He testified that it was not in accordance with medical practice to leave a foreign body in the patient without informing him of the fact. Henry also testified that if he were working with a needle in the exposed area of the body and the needle came out of the needle holder with which he worked and remained in the body where he was working it is most likely that he would be aware of it.

The plaintiff further adduced expert testimony regarding the hospital's procedure for accounting for surgical needles used during the May, 1967 operation. Frederick Nicewicz, the acting administrator of the hospital, testified that in 1967 the hospital did not have any rules or regulations governing the counting of needles relative to surgical procedures. He indicated that the counting

of needles was left to the operating room personnel. The plaintiff also called Mary Rose, the hospital operating room supervisor. Rose was the circulating nurse employed by the hospital during the plaintiff's 1967 operation. She stated that in 1967 the hospital did not have a written policy regarding the counting of surgical needles but instead utilized a "one for one" procedure whereby the scrub nurse was not to give the surgeon a new needle until she had received one back. She testified that it was the scrub nurse's responsibility to actually watch each specific needle while it was being used and while it was in the operating room and to notify the surgeon if she did not receive a needle back. Rose further indicated that neither she nor the scrub nurse was aware of a missing needle in the 1967 operation.

Additionally, Henry testified that it was the scrub nurse's responsibility to count needles in the operating room and that he would lay the needle and needle holder down on a towel below the surgical incision and that it was the scrub nurse's duty to retrieve it and make some disposition of it.

Verstandig testified, however, that the practice in the New Haven county area was to count all needles used in abdominal surgery before the abdomen was closed.

We are unable to agree with the defendants that the plaintiff's evidence was so devoid of expert testimony as to warrant a directed verdict. Considering the evidence in a light most favorable to the plaintiff, the jury could reasonably and logically have concluded that Henry had failed to exercise the due care and skill required under the circumstances. The jury could have also found the

Griffin Hospital negligent in that it failed to require needle counts or in that it failed properly to execute its "one for one" procedure in the operating room. The defendants themselves, as qualified experts, provided evidence which was clearly sufficient to support a verdict. *Console* v. *Nickou,* supra, 274; *Allen* v. *Giuliano,* 144 Conn. 573, 575, 135 A.2d 904 (1957); *Snyder* v. *Pantaleo,* supra, 294; *Slimak* v. *Foster,* supra, 370–71.

Furthermore, the evidence, while circumstantial in nature, with the inferences drawn most favorably to the plaintiff, would reasonably and logically support a finding by the jury that the defendants had left a needle in the plaintiff and that this needle caused the plaintiff pain and necessitated further surgery. See *Console* v. *Nickou,* supra, 275.

The defendants in their second assignment of error assert that their motions for judgment notwithstanding the jury's failure to return a verdict should have been granted because the plaintiff failed to produce expert medical evidence that either defendant fraudulently concealed the existence of the surgical needle in the plaintiff.

We find this claim to be without merit.

General Statutes § 52-595 provides that "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise, and unequivocal. *Alaimo* v. *Royer,* 188 Conn. 36, 448 A.2d 207 (1982); *Lewis* v.

*Lewis,* 162 Conn. 476, 481, 294 A.2d 637 (1972); *Basak* v. *Damutz,* 105 Conn. 378, 382-83, 135 A. 453 (1926). The defendants attempt to engraft onto this framework the requirement that expert medical testimony be required to prove fraudulent concealment in a medical malpractice action. The trial court, inter alia, charged in substance that the jury must find that all or part of a surgical needle was left in the plaintiff during surgery at the hospital on May 18, 1967 and that the defendants had actual knowledge of this fact on or before May 21, 1970 and that the defendants having such knowledge did not inform the plaintiff of such information for the purpose of keeping her ignorant so that she would not sue them.[3]

"The true test for the admissibility of expert testimony is 'whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue.'" *Schomer* v. *Shilepsky,* 169 Conn. 186, 191, 363 A.2d 128 (1975), quoting *Taylor* v. *Monroe,* 43 Conn. 36, 44 (1875). Here the issues of whether the defendants had actual knowledge of the needle in the plaintiff and of whether the defendants concealed this knowledge were capable of resolution within the ordinary knowledge and experiences of the jurors. "The rule requiring expert testimony applies only when the question involved goes beyond the field of the ordinary

[3] Today's opinion is not to be construed as approving the instructions given by the trial court in this matter. The issue of continuing tort has not been properly raised before us. See *Handler* v. *Remington Arms,* 144 Conn. 316, 130 A.2d 793 (1957); *Puro* v. *Henry,* 32 Conn. Sup. 118, 342 A.2d 65 (1975).

knowledge and experience of judges or jurors." *Bader* v. *United Orthodox Synagogue,* 148 Conn. 449, 454, 172 A.2d 192 (1961).

"The general rule that fraud is not presumed, but must be proved by the party who alleges it, does not mean that it cannot be otherwise proved than by direct and positive evidence; circumstantial evidence may be sufficient." 37 Am. Jur. 2d, Fraud and Deceit § 439, p. 599. See *Console* v. *Nickou,* supra, 275, wherein we stated: " 'The test of the sufficiency of proof by circumstantial evidence is whether rational minds could reasonably and logically draw the inference. *Andrea* v. *New York, N.H. & H. R. Co.,* 144 Conn. 340, 344, 131 A.2d 642 [1957] ; *Pierce* v. *Albanese,* 144 Conn. 241, 256, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 [1957]. The proof need not be so conclusive that it precludes every other hypothesis. It is sufficient if the proof produces in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact to be inferred is true. *Hennessey* v. *Hennessey,* [145 Conn. 211, 214, 140 A.2d 473 (1958)] ; *Pierce* v. *Albanese,* supra; *Dickson* v. *Yale University,* 141 Conn. 250, 253, 105 A.2d 463 [1954], and cases cited.' *Cayer* v. *Salvatore,* 150 Conn. 361, 364, 189 A.2d 505 [1963]."

Each inferential fact need not be proven by the quantum of proof required to find the ultimate fact. If the jury could reasonably have reached the conclusion that the cumulative effect of the facts they found proven established the fraudulent concealment that would be sufficient. Cf. *State* v. *Hayes,* 127 Conn. 543, 554, 18 A.2d 895 (1941) ; *State* v. *Olavieri,* 123 Conn. 678, 679–80, 195 A. 181 (1937) ;

see also *State* v. *Johnson,* 162 Conn. 215, 231–32, 292 A.2d 903 (1972); *State* v. *Gallivan,* 75 Conn. 326, 329, 53 A. 731 (1902).

On the basis of the evidence taken in a light most favorable to the plaintiff, we cannot say as a matter of law that the jury as the arbiter of credibility could not have found that both defendants had actual knowledge of the needle in the plaintiff's body from the time of the May 18, 1967[4] operation and that they had fraudulently concealed this knowledge.

There was also testimony from which the jury could have reasonably and logically inferred that the defendant Henry acquired actual knowledge of the needle in the plaintiff's body at the time of the October, 1969 x-rays. These x-rays and the x-ray report were prepared by the Radiology Group of which Pantaleo is the president and chairman. Pantaleo, a close friend of Henry's who at one time

[4] If our role was to determine whether Philip Henry or the Griffin Hospital had actual knowledge of the presence of the needle in the plaintiff's abdomen then Justice Shea's observations in his dissenting opinion would be pertinent. The issue before us, however, is to determine whether there was sufficient evidence from which the jury could find actual knowledge and for that purpose it is not necessary to conjure up a cloak and dagger scenario. It is possible that Henry inadvertently left a needle in the plaintiff's abdomen during surgery and inadvertently failed to notice it there, that Carl Pantaleo inadvertently failed to observe on the 1969 x-ray what was obvious to him on a virtually duplicate x-ray in 1972, and inadvertently failed to advise Henry about the needle in 1969, although he made it a point to advise Edward Harvey about it in 1972, that the scrub nurse inadvertently failed to observe a needle in the plaintiff's abdominal cavity and inadvertently overlooked the fact that she gave Henry a needle without receiving one in return and inadvertently failed to notice at the end of the surgical procedure that she was one needle short, but common sense tells us that when inadvertence is widespread the answer may lie elsewhere.

occupied adjoining offices with him, testified that it was his responsibility as a radiologist to make the doctor aware of any abnormalities in the x-rays and that he made it a point to advise the referring doctor of any abnormalities. He also conceded that it was possible that he may have had verbal discussions with Henry in addition to the written report. Pantaleo testified that the October, 1972 x-rays taken while the plaintiff was in the care of Harvey revealed a foreign object in her abdomen and that Harvey was informed of this fact.

Thereafter Pantaleo testified that the x-rays of the plaintiff in 1969 and 1972 disclosed the same abnormality.

On the basis of this testimony taken in a light most favorable to the plaintiff, the jury could have inferred that Pantaleo has orally informed the defendant Henry of the needle in October, 1969. Evidence of a regular practice permits an inference that the practice was followed on a given occasion. McCormick, Evidence (2d Ed.) § 195. Pantaleo's testimony respecting his responsibility and his regular practice as a radiologist of advising referring doctors of abnormalities permitted an inference that the practice was followed in this instance. The fact that the abnormality in question may not have been disclosed in the written report did not preclude the jury from inferring that Pantaleo, in accordance with a practice which he himself regarded as very important, advised Henry of it in some other fashion.

The evidence was sufficient to warrant the submission of the case to the jury, and the trial court

was correct in denying the defendants' motions for judgment notwithstanding the jury's failure to return a verdict.

There is no error.

In this opinion SPEZIALE, C. J., ARMENTANO and SPONZO, Js., concurred.

SHEA, J. (dissenting). I disagree with the conclusion reached by the majority that there was sufficient evidence to support a reasonable inference, as stated in the opinion, "that both defendants had actual knowledge of the needle in the plaintiff's body from the time of the May 18, 1967 operation and that they had fraudulently concealed this knowledge." The only evidence relied upon for this proposition is the participation of the defendant Henry and of nurses employed by the defendant hospital in the operation which left the plaintiff with a needle in her abdomen. The scenario of both the doctor and the nurses realizing at the time of the operation that a needle was in the plaintiff's body and choosing to leave it there and conceal its presence is not wholly impossible. The medical profession, like any other, has its share of villains. Common experience, however, tells us that inadvertence, which might well constitute negligence, is a far more likely explanation for this unfortunate occurrence.

"Connecticut case law firmly establishes that fraud must be proved by a standard more exacting than 'a fair preponderance of the evidence.'" *Alaimo* v. *Royer,* 188 Conn. 36, 448 A.2d 207 (1982). It is incongruous that so soon after approving such formulations as "clear and satisfactory"

or "clear, precise and unequivocal" as tests of the evidence for claims of fraud; *Alaimo* v. *Royer,* supra; we pay them merely lip service. Where there is nothing in the evidence which clearly makes actual knowledge of the wrong on the part of the tortfeasor a more reasonable inference to be drawn than any other, this standard would preclude a finding of fraudulent concealment. I do not see how the evidence in this case can be said to meet this test when it leaves simple negligence standing as a perfectly reasonable and far more probable explanation of the misconduct relied upon.

I am concerned not only about this case, which I concede is a "hard" one, but also about the ramifications of the majority opinion in rendering the protection afforded by the statute of limitations largely illusory in malpractice actions and perhaps in others. In virtually every such case the wrongful conduct is susceptible of two possible explanations: (1) that it was inadvertent and (2) that it was intentional at least in the sense that the defendant was aware of his error and failed to reveal it. The majority would give the jury complete freedom to choose the second alternative without any indication from the evidence that the case presented a rare occasion of villainy rather than a common instance of negligence. This deference to the trier leaves virtually any professional exposed permanently to a claim that he had actual knowledge of his misconduct when it occurred and that, by failing to disclose it, he is guilty of fraudulent concealment which removes the statutory bar.

As for the additional evidence pertaining wholly to the liability of the defendant Henry, only by sheer speculation can it be said to indicate that he had actual knowledge of the presence of the needle

in the plaintiff prior to its discovery in 1972 as a result of the x-ray requested by Harvey. The majority opinion necessarily implies that the jury could reasonably infer that Pantaleo, the president of the Radiology Group which took both the 1969 and 1972 x-rays, conspired with Henry to conceal the plaintiff's condition by falsifying the 1969 x-ray report which disclosed merely the presence of "radiopaque sutures." There is no evidence that this report, given the use of wire sutures during the 1967 operation, indicated any abnormality which would lead a reasonably prudent physician to investigate further. Any knowledge of the results of the x-ray beyond what the report revealed which can be attributed to the defendant Henry must have been acquired from Pantaleo, his "long time friend." Pantaleo testified that he never informed Henry of the presence of a needle in the plaintiff and there was no contrary testimony. The refusal to believe Pantaleo, which is the trier's prerogative, would not justify an affirmative finding opposite to his testimony. *State* v. *Mayell,* 163 Conn. 419, 427, 311 A.2d 60 (1972); *Marquis* v. *Drost,* 155 Conn. 327, 332, 231 A.2d 527 (1967); *Panicali* v. *Connecticut State Board of Labor Relations,* 147 Conn. 344, 348, 160 A.2d 903 (1960). That friendship alone is a sufficient basis upon which to hang a reasonable inference of conspiracy is a novel proposition indeed. This fantasy envisions the willingness of Pantaleo, who was never even named as a defendant, to involve himself in grossly unethical conduct in 1969 which his own x-ray report in 1972 brought to light. Such a contrivance should be confined to the realm of fiction and not given judicial sanction as a basis for finding fraud under the established standard.

Accordingly, I dissent.