[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTIONS IN LIMINE OF DEFENDANTS ASAHI CHEMICAL INDUSTRY CO. LTD AND NAMCO AND THIRD PARTY DEFENDANT SWIMLINE INTERNATIONAL
Defendants Asahi Chemical Industry Co. Ltd ("Asahi") and NAMCO and third party defendant Swimline International Corp. ("Swimline") have filed motions in limine seeking to preclude the testimony of a witness disclosed by the plaintiff, Troy Robillard, as an expert witness on certain issues.
In a disclosure pursuant to P.B. § 13-4(4) dated July 9, 1999, the plaintiff disclosed that he would call Milton Costello, an engineer, as an expert witness on the design, manufacture and assembly of the above-ground described pool in which the plaintiff sustained a spinal cord injury after a dive.
The plaintiff disclosed that Mr. Costello would testify that the Asahi pool was dangerous and defective in the following respects:
 1. "that the liner at the bottom of the pool was not sufficiently slip-resistant so as to reduce the risk of a diver's head slipping and thereby exposing the head to contact with the bottom."
 2. "the liner at the bottom of the pool did not have markings that would assist a diver in recognizing the bottom of the pool and its depth."
 3. "the liner of the pool was not properly colored in a manner that would assist a diver in recognizing the bottom of the pool and its depth."
 4. "that [the] portion of the liner of the pool above water level did not contain depth markers or warnings that diving is not permitted."
 5. "there were insufficient instructions provided to the owner of the pool concerning use of the pool and safety, CT Page 12865 including the placement of safety warnings and instructions for viewing by users of the pool."
 6. "there were insufficient instructions provided to the owner of the pool concerning the placement of a deck next to the pool."
 7. "These unreasonably dangerous and defective conditions were the proximate cause of the plaintiff's accident and injuries."
 8. "Asahi and Swimline were responsible with respect to the defects in the liner of the pool, as set forth above."
 9. "Asahi and NAMCO were responsible with respect to insufficient instructions being provided to the pool owners, as set forth above."
 10. "The owners of the pool were negligent to the extent they failed to make proper use of the limited warnings and instructions that were provided by Asahi and/or NAMCO."
The motions to preclude were filed shortly after the movants deposed Mr. Costello. Third party defendant Swimline has moved to preclude Mr. Costello from testifying as to three opinions:
 "1. The liner of the pool was not sufficiently slip-resistant (in other words, it was too slippery) and that this was a defect in the pool which caused plaintiff's injuries;
 2. The bottom of the pool liner was not white, and this was a defect in the pool which caused plaintiff's injuries; and
 3. There were no markings on the bottom of the pool liner, and that this was a defect in the pool which caused plaintiff's injuries."
Swimline alleged that "Mr. Costello's testimony on these points is not reliable and is not relevant to the issues in the case" and therefore is not admissible pursuant to the analysis of admissibility of expert testimony in State v. Porter, 241 Conn. 57
(1997).
Defendants Asahi and NAMCO adopted Swimline's motion. They raised as an additional issue that Mr. Costello "should be CT Page 12866 precluded from testifying because of his acknowledged lack of expertise and qualifications." In their brief, these defendants also specifically contended that Mr. Costello is not qualified to testify on the efficacy of warnings, the effects of alcohol, the adequacy of the manual or instructions provided to the owner of the pool, the role of the deck of the pool in the plaintiff's injury and the "kinematics of the accident."
The movants submitted to the court a transcript of the deposition testimony of Mr. Costello setting forth his responses to questions concerning the basis for each of his various opinions. After reviewing that transcript and the other materials submitted by the parties, this court determined that it had reason to conduct a hearing to receive evidence concerning the basis of the challenged opinions of this disclosed witness. This court issued a written order setting forth the scope and purpose of the hearing, plaintiff voiced no objection to the court's determination that he bore the burden of proving that there was a sufficient basis for the challenged opinions, that is, "sufficient indicia of legitimacy" to support the use of evidence as being evidence that "may profitably be considered by the trier of fact" pursuant toState v. Porter, supra, 247 Conn. at 91.
The parties agree that in State v. Porter the Connecticut Supreme Court adopted the conditions for admissibility of scientific evidence set forth in Daubert v. Merrell DowPharmaceuticals Inc., 509 U.S. 579 (1993). Since its decision inDaubert, the United States Supreme Court has decided in Kumho TireCo. Ltd. v. Carmichael, Docket No. 97-1709 (March 23, 1999), that the trial court's review function with respect to the admissibility of expert opinions is not limited to scientific opinions and that the factors concerning reliability set forth in Daubert are not the exclusive indicia to be considered in determining that an opinion has sufficient basis and reliability to be relevant. The plaintiff has not claimed that the approach to expert opinion testimony adopted in State v. Porter does not apply to the challenged opinions.
Hearing
At the evidentiary hearing, the plaintiff presented Mr. Costello as a witness. Though the announced and reiterated purpose of the hearing was the basis of Mr. Costello's opinions on the challenged matters, plaintiff's counsel for the most part confined his questions to Mr. Costello's education and employment as a CT Page 12867 designer of large institutional swimming pools, natatoria and fountains and statements of the substance of his opinions. With regard to the issue of the color of the pool liner, plaintiff's counsel elicited testimony that white surfaces reflect light to a greater degree than blue surfaces, aiding a viewer's ability to appreciate the depth of a pool. With regard to markings on the liner, the witness stated that they would serve to make the bottom look closer than it really was. With regard to the issue of slipperiness of the liner, Mr. Costello stated that substances have a measurable coefficient of friction, that the coefficient of friction for the pool liner at issue was .2 and that a liner with a "rattail finish" has a coefficient friction of .67 and is far less slippery.
The only study that Mr. Costello described was a study in which divers were asked to perform shallow dives but nevertheless reached a depth of four feet. In response to some questions, Mr. Costello stated that, he believed that studies or standards existed but he did not identify them by name or origin, nor were such alleged items produced in evidence to demonstrate that they existed and that they furnish a basis for the conclusions offered by Mr. Costello.
The plaintiff elicited no testimony concerning the basis for Mr. Costello's conclusion that there is a causal relationship between the alleged defects and the injury to the plaintiff.
In addition to Mr. Costello's testimony, the plaintiff presented his own affidavit, in which he stated that he had previously hit his head diving into the same pool and that his arms were extended outward in front of his head as he dove and that they "would have struck the bottom of the pool before my head, given the manner in which I dove." The plaintiff also presented the transcript of the deposition of Mr. Costello. In that deposition, Mr. Costello stated that white liners improve visibility but that he was not aware of any study that determined that a difference in color was significant in preventing injuries or that white liners had been demonstrated to be safer than blue liners. (Tr. pp. 94-96).
Mr. Costello testified that he could not think of any studies that have revealed the safety benefits of markings at the bottom of a pool, though he believed some such study might exist. (Tr. p. 99). CT Page 12868
The plaintiff also presented the curriculum vitae of Mr. Costello.
The defendants submitted the transcript of a deposition of an engineer, Clyde Richard, opining that there was not enough scientific data to say that slip resistance factors have any effect in reducing injuries.
Mr. Richard testified that he knew of no proof of the theory that a higher slip resistance would reduce the likelihood of injury in water of a given depth. Mr. Richard noted that a Dr. Morrow had a theory concerning slip resistance but that "I don't see any scientific evidence to say this is a true theory." (Ex.A, sub ex. E p. 70-71). Mr. Richard noted that Dr. Morrow had measured the coefficient of friction of a vinyl pool liner as "0.2 plus or minus 0.15" and that this finding is "troubling" because the margin of uncertainty is almost as large as the measurement itself. (Ex. A, sub ex. E, pp. 68, 72). This witness indicated that he knew of no scientific support for the theory that greater slip resistance avoids injuries (p. 69-71).
Findings
Based on the evidence, this court finds that some of the opinions of Mr. Costello are admissible and some are not. The court is mindful that its task in connection with the motions is not to decide the credibility of the testimony or to determine whether it is sufficient to support a verdict, but only whether it has sufficient basis to take it out of the realm of unsupported theory or speculation and into the realm of evidence with enough indicia of reliability to be relevant in determining whether there were defects and whether they proximately caused the plaintiff's injury. The court recognizes that the production of studies is not the only means of establishing that a theory is supported by "sufficient indicia of legitimacy to be profitably considered" by the jury at trial and that the means vary depending on the kind of theory or scientific data at issue. State v. Porter, supra,241 Conn. 84.
As the U.S. Supreme Court ruled in Kumho Tire Company, supra, "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular experience, and the subject of his testimony." The factors which the Court said may bear on a judge's determination are: CT Page 12869
• whether the theory or technique can be and has been tested;
• whether it has been subjected to peer review and publication;
• whether it has a high known or potential rate of error and whether there are standards controlling the operation of the technique; and
• whether the theory or technique enjoys general acceptance within a relevant scientific community.
Daubert v. Merrell Dow Pharaceuticals, Inc., supra,509 U.S. 592-94.
The Connecticut Supreme court ruled in State v. Porter, supra,241 Conn. 86, that, depending on the nature of the theory at issue, the factors listed above may play a role in the trial court's assessment along with such other factors as the prestige of the witness in the relevant area of expertise, the ability of the expert to explain the data and methodology that underlie it, and whether that methodology is used for purposes other than litigation.
Mr. Costello's theory that white surfaces provide better visibility than blue ones rests on the scientific principle, recognized by the other engineers whose transcripts were provided, that light reflects better from white surfaces. His further theory as to causation, that is, that the difference in increased task acuity is sufficient to increase safety, was not supported by any evidence of, for example, a lower rate of injuries in white pools than in blue ones, nor was any evidence presented to indicate the extent of difference in visibility. If, for example, a white liner causes a pool to appear only an inch or two shallower than a blue liner, the theory that the color was a causative factor would be highly suspect, especially in the absence of any evidence that such a difference would affect the likelihood of injury. More concretely, if a white pool looks two inches shallower than a blue one and diving into the actual depth would still be likely to cause an injury, the difference in visual acuity would be irrelevant.
Mr. Costello offered no reasoning to support his theory on causation but merely assumed that greater visibility of any extent was enough to make a difference in safety. CT Page 12870
Mr. Costello's observations on the visual affect of a marking on a pool liner are admissible because they describe a phenomenon that is easily verifiable: items in a body of water look closer than they are. Mr. Costello's theory that lack of markings bears a causative relationship to the plaintiff's injury has not been shown to rest on any testing, or general acceptance by pool engineers. Again, the plaintiff presented no evidence as to the extent of the phenomenon of creating an impression of shallowness. Does a marking make the bottom look four inches closer than it really is or four feet closer? Do fewer diving injuries occur in pools with markings, or, to put it another way, is there a significant correlation between altering users' perceptions of depth and a reduction in the number of dives into too shallow water or a reduction of injuries?
Witnesses are permitted to express opinions to the trier of fact only if they "have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience an aid to the court or the jury in determining the questioned issue." Puro v. Henry, 188 Conn. 301,309 (1982); Siladi v. McNamera, 164 Conn. 510, 513 (1973). Expert opinion is not admissible unless it is stated in terms of the probable and not merely the possible. State v. Weinberg,215 Conn. 231, 245 (1990); Healy v. White, 173 Conn. 438, 443-446 (1977). A witness' opinion on causation is not admissible if there is no basis in some reliable, relevant facts or determination but is merely an unsupported conjecture, speculation or theory.
Mr. Costello's testimony concerning the coefficient of friction of a wet vinyl liner and of another surface has not been shown to be derived from any actual measurements. He testified that he had not measured it and he vaguely testified that the figure was based on a study he could not identify and could not locate. (Dep. Tr. 79-82). Even if, in the absence of any testimony that this is so, the figures offered were taken as resulting from actual measurement and not from guess work or reliance on the opinion of Dr. Morrow in a finding regarded as suspect by another engineer, no basis was shown for the theory that in water of the actual depth into which the plaintiff dove, the difference in slipperiness of the liner could, as a matter of physics, have prevented an injury from occurring. Mr. Costello admitted that he did not analyze the significance of the slipperiness factor with regard to the actual water depth or manner of the dive. His conclusion that the higher degree of slipperiness was causative of the injury or, conversely, that the injury would CT Page 12871 not have resulted if the liner were less slippery, was in no way supported. No calculation, analysis, research, study, data, or report of accepted effects was offered. Mr. Costello's opinion on causation is a wholly unsupported theory. He holds the opinion that a less slippery surface causes a diver's arms to stay extended and keeps the head from hitting the bottom of a pool, but he provided absolutely no basis or support for that conclusion. Certainly, less slipperiness would not matter if the water were only two inches deep.
No showing was made to support a finding as to the depth at which less slipperiness would make a difference for the capacity of human arms to support the body in a dive without the head descending to the same depth as the hands.
Mr. Costello did not provide any support for his conclusion that such is the case; he simply said it is so, with no demonstrated basis whatever:
 Q. How is it that you claim, Mr. Costello, in this case that a pool bottom with a coefficient of friction greater than point five would have prevented Mr. Robillard's injury?
 A. I believe that he would then have had the ability to mitigate and reduce the force of impact had his hands held.
Q. What was the force of impact in Mr. Robillard's case?
A. I haven't done these, that kinematic analysis.
(Dep. Tr. P. 84)
At the hearing on September 9, 1999, Mr. Costello testified that he still had not performed any analysis of Mr. Robillard's dive, explaining that he could not do so because it was necessary to know six factors, and he knew only four of them. The only factor he mentioned was leg strength, that is, the force used in springing out to dive.
This court finds that neither Mr. Costello's opinions concerning the measurement of the coefficient of friction nor his opinions concerning causation meet the threshold standard of Statev. Porter.
Additional Objections
CT Page 12872
In addition to the challenges based on the State v. Porter
standards, defendants Asahi and NAMCO argued that Mr. Costello lacks any expertise in the efficacy of warnings, effects of alcohol, adequacy of the manual or instructions provided, and role of the deck and kinematics of the accident.
Neither Mr. Costello's curriculum vitae nor his testimony indicates that he has any training or experience with regard to alcohol or behavior after ingesting alcohol that is superior to the jurors' knowledge. He has not been shown to be competent to testify on these subjects as an expert witness. He also conceded he had not performed a kinematic study. Mr. Costello acknowledged that he is not an expert on warnings in general, but indicated knowledge concerning the design of warnings regarding diving and his work in devising such warning signs.
He testified that he is employed in designing swimming pool structures and his curriculum vitae indicates many projects in which he states he was engaged as a pool and natatorium design engineer. With regard to those topics, the court finds that a foundation has been laid for Mr. Costello to offer opinions based on his knowledge, training and experience, and the motion is denied.
Conclusion
In summary, the motions to preclude are granted as to testimony by Milton Costello concerning causation of injury resulting from the color of the liner, causation of injury from lack of markings, the degree of slipperiness of the liner, causation of the injury by that alleged slipperiness, effects of alcohol on the plaintiff, kinematics of the plaintiff's dive, and warnings other than warnings concerning diving. The motions are otherwise denied.
Beverly J. Hodgson Judge of the Superior Court