SUSAN DIMMOCK *v.* LAWRENCE AND MEMORIAL
HOSPITAL, INC., ET AL.
(SC 18053)
(SC 18054)

Rogers, C. J., and Katz, Vertefeuille, Zarella and Schaller, Js.

Argued February 11—officially released May 13, 2008

*Juri E. Taalman,* with whom, on the brief, was *David W. Bush,* for the appellant (plaintiff).

*Thomas O. Anderson,* with whom, on the brief, was *Cristin E. Sheehan,* for the appellees in Docket No. 18053 (defendant Frank W. Maletz et al.).

*Thomas W. Boyce, Jr.,* with whom, on the brief, was *Jennifer Antognini-O'Neill,* for the appellees in Docket No. 18054 (defendant Patrick F. Doherty et al.).

*Opinion*

KATZ, J. In this medical malpractice action, the plaintiff, Susan Dimmock, appeals from the summary judgment of the trial court rendered in favor of the defendants, Patrick F. Doherty, Frank W. Maletz, and the medical practice groups to which they respectively belong, Neurological Group, P.C., and Thames River Orthopaedic Group, LLC.[1] The plaintiff contends that the trial court improperly: (1) precluded her sole expert witness on the issue of the proper standard of care from testifying on the ground that the witness' opinion did not relate to the specific negligence allegations in the operative complaint; (2) denied her request to amend her complaint to include allegations related to her expert's opinion on the ground that the statute of limitations had expired and that these new allegations did not relate back to those in the operative complaint; and (3) granted the defendants' motions for summary judgment on the ground that the plaintiff lacked an expert witness to testify regarding the standard of care relative to her negligence allegations. We affirm the judgment.

The record reveals the following undisputed facts and procedural history. On or about November 9, 2000,

---

[1] Lawrence and Memorial Hospital, Inc. (hospital), the hospital where the plaintiff received her initial surgery and postsurgical treatment, also was named as a defendant in this action, but the plaintiff withdrew her claim against the hospital prior to the trial court's ruling on the defendants' motions for summary judgment. For purposes of clarity as to the claims on appeal, references to the defendants do not include the hospital.

the plaintiff had surgery at Lawrence and Memorial Hospital, Inc. (hospital), to remove a synovial cyst that had developed on her spine. Doherty performed a decompression and excision of the cyst, with Maletz assisting, and Maletz performed a bone graft that then was used to support a spinal fusion, with Doherty assisting. The plaintiff received postoperative physical therapy and was released from the hospital on November 17, 2000. On November 26, 2000, the plaintiff was readmitted to the hospital with significant drainage from the wound site. Doherty performed an incision and drainage procedure and repaired the site of a cerebral spinal fluid leak. Another physician performed an infectious disease consult, diagnosed the plaintiff with a probable infected wound site and recommended that the plaintiff start an intravenous course of antibiotic therapy. The plaintiff continued to have a persistent draining lumbar wound and thereafter was diagnosed with an antibiotic resistant bacterial infection. On December 5, 2000, Doherty performed a second incision and drainage procedure on the plaintiff. The plaintiff was prescribed a six week course of intravenous drug therapy to treat the infection. She was discharged from the hospital on December 20, 2000.

The plaintiff was readmitted to the hospital on March, 4, 2001, and remained there until March 16, 2001, because of an abscess at the postoperative wound site. During that time, Doherty performed a third surgery to irrigate and drain the infected lumbar wound site. On or about March 20, 2001, the plaintiff was readmitted to the hospital for a third time, with the same symptoms that she had experienced earlier that month—drainage from the wound site and back pain, as well as an elevated temperature. She was diagnosed with a drug resistant infection at the wound site, infection of the lumbar vertebrae and other conditions. The plaintiff remained hospitalized until March 29, 2001, and continued a

course of intravenous antibiotic treatment, as well as morphine and other pain management medication, through May, 2001.

On or about March 5, 2003, the plaintiff commenced this malpractice action against the defendants and the hospital.[2] The majority of the plaintiff's allegations expressly related to her infection, alleging that the defendants had been negligent in failing to ensure a sterile surgical environment (surgical suite, instruments and personnel) during surgery and postoperative treatment, and in failing to diagnose and treat in a timely manner the plaintiff's infection after the November 9, 2000 surgery. The complaint also contained negligence allegations that did not refer expressly to the infection.

On March 4, 2005, the defendants filed a motion to preclude the plaintiff from disclosing expert witnesses, or in the alternative, to compel disclosure, on the ground that she had failed to meet the December 31, 2004 disclosure deadline under a court scheduling order. The plaintiff filed a request to extend the disclosure date until September 15, 2005, which the court, *Quinn, J.*, granted. On September 15, 2005, the plaintiff filed a written disclosure of six expert witnesses. Only one of those witnesses, Sanford H. Davne, a physician, was to offer an opinion on the standard of care relative

---

[2] On March 5, 2003, the plaintiff, through her current appellate counsel, David W. Bush, filed the present action against the defendants and the hospital, with a return date of March 11, 2003. On March 11, 2003, the plaintiff, through a different attorney, filed a second action naming Doherty, Neurological Group, P.C., and Maletz as the defendants. The plaintiff filed a motion to consolidate the cases, to which the defendants objected. The defendants filed a motion to dismiss the second case, to which the plaintiff objected. The record reflects no court action on either motion. According to Bush's affidavit filed in opposition to the defendants' motions for summary judgment, on or about July 7, 2003, the court thereafter entered an agreement by the parties whereby the plaintiff would file an amended complaint to incorporate allegations from each case into one complaint. The record reflects that the plaintiff did file an amended complaint on August 4, 2003, which is the operative complaint in this case.

to the defendants' treatment of the plaintiff; the other witnesses were to offer opinions relative to the plaintiff's postoperative condition, course of treatment and future prognosis. The disclosure stated that Davne intended to offer an opinion that the defendants had deviated from the standard of care by failing to inform the plaintiff about all of her treatment and surgical options, including "a spinal fusion performed with instrumentation," and by failing "to perform surgery with the use of instrumentation." "Instrumentation" in this case refers to the use of hardware, such as steel rods, plates and wires, to support the spinal fusion, in contrast to the bone that had been harvested from the plaintiff and used in her surgery.

Thereafter, Doherty and Neurological Group, P.C., filed a motion to preclude Davne's testimony, claiming that his opinion was unrelated to the allegations in the plaintiff's complaint that the defendants had been negligent in causing, diagnosing and/or treating the plaintiff's infection. The plaintiff objected to the motion, contending that Davne's opinion elaborated on claims in the complaint and that the court should delay ruling on the motion until after the defendants had deposed Davne. The plaintiff simultaneously sought leave to amend her complaint to incorporate Davne's opinions regarding the use of instrumentation. The defendants objected to the request to amend the complaint on the ground that such allegations would add a new claim that was barred by the statute of limitations and, alternatively, on the ground that allowing the amendment would be prejudicial to them.

By agreement of the parties, the trial court, *Beach, J.*, first ruled on the request to amend the complaint, because a ruling favorable to the plaintiff would eliminate the objection regarding Davne's testimony. The court noted that it was "deciding the objections not on the usual criteria for deciding whether to allow amend-

ments to complaints, however, which . . . are usually liberally applied, but rather on statute of limitations grounds." The court determined that it made little sense in the context of the case to overrule the defendants' objection to the amendment only to hear the parties again in the context of a summary judgment motion on the basis of the defendants' statute of limitations special defense. The court denied the plaintiff's request, concluding that the new allegations did not amplify, and therefore relate back to, those in the operative complaint. It determined that, under a fair reading of the complaint, the allegations expressly or implicitly related to the plaintiff's infection. The court concluded that the new allegations were unrelated to infection, and instead asserted a claim that the spinal fusion should have been performed with hardware or "instrumentation." The court subsequently considered the motion to preclude Davne's testimony. The court examined the substance of Davne's opinion as set forth in the disclosure and determined that it revealed no opinion about the defendants' conduct relative to the plaintiff's infection, with all but one ambiguous sentence therein referring expressly to the defendants' failure to use or, discuss with the plaintiff the use of, instrumentation for the surgery. In light of that ambiguous sentence, which left open the possibility that Davne could offer an opinion relevant to the allegations in the operative complaint, and the likelihood that preclusion "almost certainly [would] result in judgment for the defendants," the court declined to preclude Davne's testimony at that juncture. Instead, the court ordered the defendants to depose Davne, with costs to be borne by the plaintiff, and further held: "If no opinion is expressed to the effect that the plaintiff's condition was not properly 'monitored' and/or proper recommendations were not made, and that such deviations from a standard of care resulted in complications of infection,

then the opinion will be precluded." After taking Davne's deposition, the defendants again filed motions to preclude his testimony for his failure to offer an opinion related to infection. The court granted those motions over the plaintiff's objection. The plaintiff then withdrew her claims against the hospital. The defendants thereafter filed motions for summary judgment, which the court granted. This appeal followed.[3]

The plaintiff claims that the trial court improperly: denied her request to amend her complaint; precluded her expert witness on standard of care and causation; and rendered summary judgment on the ground that the plaintiff lacked an expert witness to testify regarding standard of care and causation. We address each claim in turn.

I

The plaintiff claims that the trial court determined that her amended complaint sought to add allegations that did not relate back to those in the operative complaint on the basis of an unduly restrictive view of the pleadings generally and a misconception that her negligence allegations were limited to the cause and effect of the infection. The plaintiff contends a broader view of the allegations is supported by the fact that the operative complaint is an "amalgamation" of two earlier complaints from cases alleging negligence on the basis of two different theories—one relating to the infection, and the other relating to her back injury. See footnote 2 of this opinion. We conclude that, although the trial

---

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. For reasons that are not apparent, the plaintiff filed two appeals, one appealing the judgment in favor of Doherty and Neurological Group, P.C., and another appealing the judgment in favor of Maletz and Thames River Orthopaedic Group, LLC. The plaintiff's briefs as to each appeal appear to be identical, and we therefore consider the appeals as one.

court improperly determined that the operative complaint was limited to claims relating to the plaintiff's infection, the new allegations nonetheless did not relate back to those in the operative complaint and hence were time barred.

Under our case law, it is well settled that "a party properly may amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same. . . . If a new cause of action is alleged in an amended complaint . . . it will [speak] as of the date when it was filed. . . . A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but whe[n] an entirely new and different factual situation is presented, a new and different cause of action is stated." (Citations omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 129–30, 788 A.2d 83 (2002).

Before examining the pertinent allegations of the operative complaint, we note that the parties disagree about whether this court reviews for an abuse of discretion or de novo a trial court's decision on whether amendments to a complaint relate back for purposes of the statute of limitations. This court previously has not addressed this issue. Although a few cases have indicated that an abuse of discretion standard applies; see *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 240, 429 A.2d 486 (1980); *Jacob* v. *Dometic Origo*

*AB*, 100 Conn. App. 107, 110–11, 916 A.2d 872, cert. granted, 282 Conn. 922, 925 A.2d 1103 (2007); the vast majority of our cases has not articulated any standard of review and simply has compared the pleadings to determine whether the new allegations relate back to the operative complaint, suggesting a de novo review. See, e.g., *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 775, 905 A.2d 623 (2006); *Alswanger* v. *Smego*, 257 Conn. 58, 66–67, 776 A.2d 444 (2001); *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 263–65, 654 A.2d 748 (1995); *Gurliacci* v. *Mayer*, 218 Conn. 531, 546–49, 590 A.2d 914 (1991); *Sharp* v. *Mitchell*, 209 Conn. 59, 72, 546 A.2d 846 (1988).

An abuse of discretion standard would be consistent with the general rule that "[t]he trial court has wide discretion in granting or denying amendments before, during, or after trial." (Internal quotation marks omitted.) *Leone* v. *Knighton*, 196 Conn. 494, 496, 493 A.2d 887 (1985); *Antonofsky* v. *Goldberg*, 144 Conn. 594, 597–98, 136 A.2d 338 (1957); see also *Bielaska* v. *Waterford*, 196 Conn. 151, 154, 491 A.2d 1071 (1985) (recognizing that "[a] trial judge has a unique vantage point that entitles his decision to great weight on appeal" when considering whether to permit plaintiffs to amend complaint to conform with proof at trial in light of nature of amendments and fair notice to defendant).[4] On the other hand, a de novo standard would be more consistent with the oft stated rule that "[t]he interpretation

---

[4] In exercising its discretion in granting or denying a request to amend a complaint during or after trial, the trial court has its unique vantage point in part because it is interpreting the plaintiff's allegations not in a vacuum, but in the context of the development of the proceedings and the parties' understanding of the meaning of those allegations. Similarly, prior to trial, in light of discovery, pretrial motions or conferences, a trial court may have a different context for the allegations than what is evident to an appellate court. Indeed, as we discuss subsequently in this opinion, the plaintiff expressly relies on the procedural posture of the case to give context to the allegations in the operative complaint.

of pleadings is always a question of law for the court and that our interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 573 n.12, 864 A.2d 1 (2005). The majority of federal courts applies a de novo standard to their relation back rule; see *Salyton* v. *American Express Co.*, 460 F.3d 215, 226–28 (2d Cir. 2006) (considering standard of review and determining that, because appellate court sits in essentially same position as trial court in comparing pleadings and no balancing of factors is required, de novo review is more appropriate than abuse of discretion standard court previously had applied); id., 227 n.12 (citing standard applied by other Circuit Courts of Appeal); and their relation back rule is akin to our doctrine. See *Gurliacci* v. *Mayer*, supra, 218 Conn. 547. In any event, we conclude that we need not resolve this question in the present case, because the plaintiff cannot prevail even under de novo review.

We begin with the operative complaint. The first count, which was against the hospital; see footnote 1 of this opinion; set forth all of the factual allegations that were incorporated in the later counts against the defendants. The specific acts of negligence alleged in count one related solely to the cause and treatment of the plaintiff's infection. In counts two through five, one as to each defendant, the plaintiff set forth additional allegations of negligence common to these defendants in paragraph thirty-four. It is undisputed that paragraph 34 (a) through (n) related solely to infection. Paragraph 34 (o) through (y) then set forth the following allegations of negligence, with emphasis on those relied on by the plaintiff as the basis for the relation back:

"*o. In that [the defendants] failed to establish a proper patient care plan for the [p]laintiff;*

"p. In that [the defendants] failed to properly communicate with other treating physicians with regard to the [p]laintiff's treatment . . .

"r. *In that [the defendants] failed to adequately and properly care for, treat, monitor, diagnose and supervise the plaintiff for problems with her back and post operative care;*

"s. *In that [the defendants] failed to adequately and properly assess and inform the plaintiff of the risks involved in the surgery;*

"t. In that [the defendants] failed to properly diagnose the sy[n]ovial cyst and the slipped disc at L5-S1;

"u. In that [the defendants] failed to properly remove the disc at L5-S1;

"v. In that [the defendants] failed to adequately and properly read, interpret and report the flexion-extension[5] films;

"w. In that [the defendants] failed to perform a timely discectomy at L5-S1;

"x. In that [the defendants] performed a spinal fusion when there was no spinal instability;

"y. In that [the defendants] improperly closed the wound as a result of that surgery." (Emphasis added.)

Paragraph thirty-four of the plaintiff's *proposed* amended complaint consolidated the allegations regarding infection, deleted the aforementioned eight allegations and substituted the following allegations:

"j. The [d]efendant[s] failed to adequately inform [the plaintiff] of all surgical options;

---

[5] Flexion is defined as the "bending of the spine so that the concavity of the curve looks forward." Stedman's Medical Dictionary (28th Ed. 2006). Extension is "the opposite or antagonistic movement of flexion." Id.

"k. In that the [d]efendants failed to adequately inform [the plaintiff] of all the surgical options in light of her history of smoking;

"*l.* In that the [d]efendant[s] failed to perform a spinal fusion with instrumentation;

"m. In that the [d]efendant[s] failed to perform a spinal fusion with instrumentation in light of the [p]laintiff's medical history;

"n. In that the [d]efendant[s] failed to adequately monitor the [p]laintiff's ongoing back condition after the initial surgery and make the necessary recommendations for additional care and treatment, including additional attempts at surgical repair."

When comparing these pleadings, we are mindful that, "[i]n Connecticut, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 778.

Undoubtedly, the overwhelming thrust of the operative complaint related to the plaintiff's infection. All of the factual allegations were set forth in the count as to the hospital, against which the plaintiff claimed negli-

gence only with respect to the cause and effect of her infection. The plaintiff concedes that a majority of the specific acts of alleged negligence related to the infection. In addition, most of the alleged injuries appear to be infection related complications. Nonetheless, the operative complaint reflects several allegations that bear no obvious connection to the infection and thus appears to stand independent of the allegations relating to the infection. The plaintiff alleges that the defendants misdiagnosed her back condition, misread the X rays and failed to provide the proper treatment for her back injuries, specifically, by performing a surgical procedure that was not needed (spinal fusion) and by failing to perform others that were appropriate (discectomy). The alleged injury of "severe and intractable back pain" appears consistent with these allegations as well as with an infection.

In resolving potential ambiguity as to the intended meaning of these allegations, we agree with the plaintiff that the genealogy of these claims supports her contention that her complaint was not limited solely to infection. The record reflects that the plaintiff originally had filed two actions relating to her back surgery. See footnote 2 of this opinion. The one at issue in the present case, filed by her appellate counsel, David W. Bush, against the defendants and the hospital, had alleged negligence in the cause and treatment of her infection (Bush complaint). Another complaint, filed by different counsel, Gary J. Greene, against Doherty, Neurological Group, P.C., and Maletz, and not the hospital, had alleged negligence principally with regard to their diagnosis and treatment of the plaintiff's back condition (presurgery, the surgeries themselves and postsurgery), but also with regard to the infection (Greene complaint). The plaintiff thereafter filed a motion to consolidate the cases. The defendants filed an objection to the consolidation and a motion to dismiss the Greene

complaint, claiming that it was barred by the prior pending action doctrine[6] because the actions were virtually alike. The plaintiff filed a reply to the defendants' objection, stating that the cases were predicated on different acts of negligence and injury and that she anticipated distinct expert testimony as to each case.[7] The record reflects no action on either motion, but, apparently by agreement of the parties, the plaintiff filed a new complaint that merged the allegations, which all parties agree is the operative complaint in this case. Paragraph 34 (a) through (q) of the operative complaint reflects the specific acts and omissions of negligence that had been alleged in the Bush complaint; paragraph 34 (r) through (y) contains the specific acts and omissions of negligence that had been alleged in the Greene complaint.[8] Therefore, we agree with the plaintiff that the

---

[6] "Under the prior pending action doctrine, [t]he pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction." (Internal quotation marks omitted.) *Larobina* v. *McDonald*, 274 Conn. 394, 409, 876 A.2d 522 (2005).

[7] In her reply to the defendants' objection to the consolidation, the plaintiff stated: "A review of the pleadings in each of the respective actions will reveal that the actions are not virtually alike, but do arise out of the same medical care and treatment. In the [Bush complaint], the primary claim against [Doherty] relates to the [p]laintiff's obtaining and suffering from an infectious condition immediately after the surgery of November 9, 2000. [The Greene complaint] sets forth claims related to the diagnosis of the [p]laintiff's underlying back condition, the recommendation for surgical intervention, and the failure to perform surgery approximately at L5-S1. It is anticipated that there is going to be separate and distinct expert testimony related to each case."

[8] The only substantive difference between the allegations set forth in the Greene complaint and those incorporated into the operative complaint was the omission of the following emphasized portion of one of the allegations: "Improperly closed the wound as a result of the surgery, *did a procedure and used instruments that led to an infection.*" (Emphasis added.) Presumably this emphasized language was deemed redundant with the negligence allegations in the Bush complaint relating to the cause and effect of the infection. Similarly, although the defendants correctly pointed out at oral

trial court improperly viewed her complaint as limited to allegations relating to her infection.

Nonetheless, we disagree with the plaintiff that the new allegations relate back to those in the operative complaint. We begin with the plaintiff's contention that the new allegations relate back to paragraph 34 (r) and (s), alleging failure "to adequately and properly care for, treat, monitor, diagnose and supervise the plaintiff for problems with her back and post operative care," and failure "to adequately and properly assess and inform the plaintiff of the risks involved in the surgery . . . ." Those broad allegations must be read contextually "to give effect to the pleading with reference to the general theory upon which [the complaint] proceeded . . . ." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 778. As we previously have noted, the theories upon which the plaintiff proceeded were that the defendants: had performed the surgery in an unsterile environment; had failed to perform a necessary procedure (dissection of the disc at L5-S1); and had performed an unnecessary procedure (spinal fusion when there was no spinal instability). The allegations in the amended complaint, however, do not relate to any of those theories. Indeed, they *directly contradict* one of those theories. Paragraph 34 (x) of the operative complaint alleges that the defendant should *not* have performed a spinal fusion because there was *no spinal instability*. Paragraph 34 (*l*) and (m) of the amended complaint posits the theory that the defendants *should* have performed a spinal fusion, but that they did not use the proper material, because the plaintiff's medical history created the risk of *greater spinal instability*. The fact that the plaintiff

---

argument before this court that the paragraph setting forth the injuries in the operative complaint are, with no additions or alterations, precisely those that had been set forth in the Bush complaint, the allegations of injury in the Greene complaint essentially overlapped with those in the Bush complaint.

sought to substitute entirely different allegations for those in paragraph 34 (r) through (y) that neither subsume nor supplement the original allegations similarly demonstrates that the new allegations do not amplify those in the operative complaint. Rather, the plaintiff is attempting to substitute an entirely new theory of negligence.

Although this court has found that allegations that assert an alternative basis for liability arising from the same facts can relate back to the original complaint; see, e.g., *Gurliacci* v. *Mayer*, supra, 218 Conn. 549 ("new allegations did not inject two different sets of circumstances and depend on different facts . . . but rather amplified and expanded upon the previous allegations by setting forth alternative theories of liability"); we are unaware of any case in which this court has held that new allegations that replace and *directly contradict* those in the operative complaint have been deemed to amplify, and hence relate back, to those in the operative complaint. Compare *Alswanger* v. *Smego*, supra, 257 Conn. 61 (allegation of lack of informed consent regarding resident's participation in surgery did not relate back to allegation that defendants had failed to disclose all material risks in connection with plaintiff's surgery, care and treatment), *Sharp* v. *Mitchell*, supra, 209 Conn. 73 (allegations of negligent construction and design of underground fuel storage area did not relate back to allegation that defendant was negligent in ordering employees to enter area), *Keenan* v. *Yale New Haven Hospital*, 167 Conn. 284, 285–86, 355 A.2d 253 (1974) (allegation of lack of informed consent to surgery did not relate back to allegation of negligence in performing surgery), *Sandvig* v. *A. Dubreuil & Sons, Inc.*, 68 Conn. App. 79, 86, 789 A.2d 1012 (2002) (allegation that defendant negligently damaged floor tiles when it installed handicap access ramp did not relate back to allegation that defendant negligently installed tile floor

on which plaintiff fell), appeal dismissed, 270 Conn. 90, 851 A.2d 290 (2004), and *Patterson* v. *Szabo Food Service of New York, Inc.*, 14 Conn. App. 178, 183, 540 A.2d 99 (allegation that defendant installed or maintained highly polished and slippery terrazzo floor and employed method of food distribution that created dangerous condition on slippery floor did not relate back to allegation that defendant had failed to clean floor and keep it free of food deposits), cert. denied, 208 Conn. 807, 545 A.2d 1104 (1988), with *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 777 (narrower amended claim subsumed within broader allegations of loss of insurance renewal commissions deemed to relate back); *Wagner* v. *Clark Equipment Co.*, supra, 259 Conn. 119 (allegation that forklift was defective because backup alarm failed to sound when forklift was engaged in reverse did relate back to allegations that forklift was defective because it lacked, inter alia, backup alarm that sounded sufficiently distinct to warn plaintiff),[9] *Gurliacci* v. *Mayer*, supra, 218 Conn. 546

---

[9] The plaintiff's reliance on *Wagner* v. *Clark Equipment Co.*, supra, 259 Conn. 114, is misplaced. In *Wagner*, the named plaintiff had brought a product liability action against the manufacturer and distributor of a forklift after the forklift backed up and struck the plaintiff from behind, knocked him to the ground and ran over his left foot, causing injuries that eventually resulted in the amputation of the plaintiff's left leg below the knee. Id., 117–18. The plaintiff initially had alleged several defects in the forklift's design, including that the forklift lacked a backup alarm that emitted a sound that was sufficiently distinct to warn the plaintiff. Id., 119. This court concluded that a new allegation that the forklift's design was defective in that the backup alarm would not sound when the forklift was engaged in reverse related back to those in the operative complaint. Id., 130. Although we broadly characterized the operative complaint's theory as alleging "an injury caused by a defective forklift"; id.; unlike the present case, the new allegation was consistent with the original allegation in that both claims were based on the same fact—that the forklift lacked a backup alarm that would have warned the plaintiff, either because it was not sufficiently audible or because it became disengaged during certain maneuvers. Indeed, evidence as to whether the backup alarm was sufficiently audible presumably would have encompassed evidence that the alarm actually functioned while the forklift was in reverse.

(allegations that defendant had acted wilfully, wantonly or maliciously, or outside scope of his employment when operating his automobile and striking plaintiff's vehicle related back to allegation that defendant had acted negligently in operating his automobile while intoxicated), *Bielaska* v. *Waterford*, supra, 196 Conn. 154 (allegations that defendants failed to replace broken glass panel and failed to inspect corridor door amplified allegations that defendants failed properly to install and maintain replacement glass in door), *Jonap* v. *Silver*, 1 Conn. App. 550, 557, 474 A.2d 800 (1984) (allegation of invasion of privacy by placing plaintiff in false light related back to allegation of injurious falsehood arising from same facts), and *Barnicoat* v. *Edwards*, 1 Conn. App. 652, 654, 474 A.2d 808 (1984) (allegations of different defects in house construction related back to other claims of defect in house construction in breach of contract claim). In the present case, whether the proper fusion material was used to secure the plaintiff's unstable spine would have required different evidence than whether the plaintiff's spine had become unstable and whether spinal fusion was a proper course of treatment or an unnecessary procedure. The mere fact that the new negligence allegations arose in connection with the back surgery is not sufficient to bring those allegations within the scope of her original complaint. See *Sharp* v. *Mitchell,* supra, 73 ("[t]he fact that the same defendant is accused of negligence in each complaint and the same injury resulted . . . does not make any and all bases of liability relate back to an original claim of negligence").

The plaintiff also relies on paragraph 34 (o) in the operative complaint, alleging that the defendants had been negligent in that they "failed to establish a proper patient care plan for the [p]laintiff . . . ." In addition to the reasons discussed previously herein, the genealogy of this allegation demonstrates that it relates solely

to the plaintiff's infection. Although the plaintiff has asked this court to view the allegations in light of their origin, contrary to the plaintiff's representations to this court at oral argument and in her brief, this allegation did not originate from the Greene complaint, but, rather, from the Bush complaint.[10] The plaintiff's own characterization of the Bush complaint in her brief to this court, which is correct in our view, is that it "originally alleged negligence resulting in infection . . . ." See footnote 7 of this opinion. It is undisputed that the new allegations of negligence relating to the use of instrumentation had no relationship to the cause or effect of the plaintiff's infection. Therefore, the new allegations also did not relate back to the patient care plan allegation. Accordingly, the trial court properly concluded that the amended complaint presented claims that did not relate back to those in the operative complaint and hence were time barred.

## II

We next turn to the plaintiff's claim that the trial court improperly precluded Davne's testimony as outside the scope of the operative complaint. Related to her claim in part I of this opinion, the plaintiff contends that the trial court improperly restricted the scope of relevant expert testimony to whether the defendants had breached the standard of care in preventing, assessing and treating the plaintiff's infection. She further contends that Davne's opinion supported her allegation that the defendants had not established, nor reviewed with her, a proper care plan. For the reasons stated in

---

[10] The plaintiff contends in her brief to this court that "subparagraphs (a) through (n) [of paragraph thirty-four] are concerned with the problem of infection raised in Attorney Bush's original complaint, whereas the allegations in subparagraphs (o) through (y) incorporate the allegations of Attorney Greene's original complaint." Reference to the Bush and Greene complaints reveals that subparagraphs (r) through (y) are the only ones that originated in the Greene complaint.

part I of this opinion, we agree with the plaintiff that, because the operative complaint included allegations that the defendants had misdiagnosed her back condition, misread the X rays, failed to provide the proper treatment for her back injuries (by performing a surgical procedure that was not needed—spinal fusion—and by failing to perform others that were appropriate—discectomy) and failed to inform the plaintiff of the risks arising from those surgical choices, the trial court improperly concluded that Davne's opinion must relate to whether a deviation in the standard of care resulted in the infection and related complications. We disagree with the plaintiff, however, that Davne's testimony otherwise was relevant to the allegations in the operative complaint.

"It is well established that [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Concerning expert testimony specifically, the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge *directly applicable to a matter in issue*, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Citation omitted; emphasis added; internal quotation marks omitted.) *Prentice* v. *Dalco Electric, Inc.*, 280 Conn. 336, 342, 907 A.2d 1204 (2006), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007).

According to the plaintiff's disclosure, Davne's opinion was that the defendants had deviated from the standard of care by failing to inform the plaintiff of all of her surgical options, including spinal fusion with the use

of instrumentation, and by failing to use that procedure during surgery. As we previously have noted in part I of this opinion, the operative complaint does not allege that spinal fusion with instrumentation should have been discussed or performed. Although the plaintiff's disclosure contains a general statement not expressly related to the use of instrumentation, in his deposition, Davne expressly disavowed any intention to offer an opinion as to the matters referenced therein.[11] Davne stated that his opinion was limited to the failure to discuss, and thereafter use, instrumentation.[12] He expressed no opinion as to whether the defendants had breached the standard of care by causing or failing to treat properly the plaintiff's infection, by failing to perform a discectomy or by performing a spinal fusion in the absence of spinal instability. "In malpractice cases, the expert's testimony must be evaluated in terms of its helpfulness to the trier of fact on the specific issues of the standard of care and the alleged breach of that standard." (Internal quotation marks omitted.) *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 189, 646 A.2d 195 (1994). Accordingly, the trial court did not abuse its discretion in precluding Davne's testimony, as he did not intend to offer any testimony relevant to the violations of the standard of

[11] The disclosure stated: "[Davne] will further testify that the doctors failed to adequately monitor [the plaintiff's] ongoing back condition post surgery and make the necessary recommendations for additional care and treatment, including additional attempts at surgical repair." Davne stated in his deposition that he did not intend to offer any testimony regarding postsurgical treatment, either with respect to adequate monitoring of the plaintiff's back condition or with respect to recommendations for additional care and treatment. Davne stated that his opinion was limited to preoperative treatment and the surgery itself, but was unrelated to the plaintiff's infection.

[12] Davne explained in his deposition that his opinion was that instrumentation generally should be used in a spinal fusion to ensure greater stability, and that the need for such stability was greater in the plaintiff's case because "she was obese and a smoker," because she had "abnormal movement on her flexion/extension views at the L5-S1 level" and because removal of the synovial cyst would have increased further the instability at that site.

care alleged in the operative complaint. See *Jewett* v. *Jewett*, 265 Conn. 669, 680, 830 A.2d 193 (2003) (no abuse of discretion in precluding testimony of expert witnesses as irrelevant to issue in case); see also *Fisher* v. *Zborowski*, 83 Conn. App. 42, 49, 847 A.2d 1057 (2004) (no abuse of discretion in precluding plaintiff from questioning defendant's expert regarding issue that did not relate to standard of care alleged to have been breached).

### III

Last, we turn to the plaintiff's claim that the trial court improperly rendered summary judgment in favor of the defendants because she lacked an expert witness to testify regarding the standard of care and causation. The plaintiff contends that no expert testimony was necessary because gross negligence or ordinary negligence may be inferred from the facts in evidence. She also contends that she can prevail without expert testimony under the theory of lost chance. We disagree.

"The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. . . . [T]he relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." (Citations omitted; internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 254, 811 A.2d 1266 (2002). It is clear, after applying this three part standard to the operative complaint, that the plaintiff's claim sounds in medical malpractice, not negligence.

"[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . [Id.], 254–55. Generally, the plaintiff must present expert testimony in support of a medical malpractice claim because the requirements for proper medical diagnosis and treatment are not within the common knowledge of laypersons. See, e.g., *Doe* v. *Yale University*, 252 Conn. 641, 686–87, 748 A.2d 834 (2000); *Levett* v. *Etkind*, [158 Conn. 567, 573–74, 265 A.2d 70 (1969)]. An exception to the general rule [requiring] expert medical opinion evidence . . . is when the medical condition is obvious or common in everyday life. . . . Similarly, expert opinion may not be necessary as to causation of an injury or illness if the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief. . . . Expert opinion may also be excused in those cases where the professional negligence is so gross as to be clear even to a lay person." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, supra, 272 Conn. 567.

Neither the cause and effect of an infection after spinal surgery nor the proper surgical treatment for a synovial cyst on the spine are matters within the common knowledge of laypersons. Moreover, it is clear that the plaintiff's allegations of negligence do not rise to the level of the kind of "obvious and egregious violation of an established standard of care"; id., 568–69; that Connecticut courts have considered to be gross negligence, requiring no expert testimony. Cf. *Puro* v. *Henry*, 188 Conn. 301, 308, 449 A.2d 176 (1982) (needle found in patient after hernia operation); *Console* v. *Nickou*, 156 Conn. 268, 274–75, 240 A.2d 895 (1968) (needle left in patient after delivery of child); *Allen* v. *Giuliano*, 144 Conn. 573, 575, 135 A.2d 904 (1957) (lacerations to

patient's leg in removal of cast); *Slimak* v. *Foster*, 106 Conn. 366, 370–71, 138 A. 153 (1927) (piece of surgical instrument left in patient after nasal operation); *Bourquin* v. *B. Braun Melsungen*, 40 Conn. App. 302, 314–16, 670 A.2d 1322 (human tissue clearly labeled " 'For Investigational Use Only' " and " 'Laboratory Sample—For Testing Only' " was grafted upon decedent), cert. denied, 237 Conn. 909, 675 A.2d 456 (1996); *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 739, 654 A.2d 771 (chiropractor, not licensed to issue prescriptions, prescribed medication not approved by Federal Drug Administration to decedent, who was undergoing cancer treatment), cert. denied, 232 Conn. 922, 656 A.2d 670 (1995).

Finally, even if we were to assume arguendo that the plaintiff's complaint may be construed to allege negligence under a "lost chance" theory, we conclude that she still was not entitled to survive summary judgment. Under that theory, the plaintiff must prove "that the defendant[s'] negligent acts decreased the [plaintiff's] chance for successful treatment . . . ." *Boone* v. *William W. Backus Hospital*, supra, 272 Conn. 573–74. Pursuit of recovery under this theory does not negate the plaintiff's obligation to provide expert testimony on the requisite standard of care and causation unless the allegations meet the exceptions otherwise applicable to excuse the plaintiff from meeting this obligation. See *Marshall* v. *Hartford Hospital*, 65 Conn. App. 738, 754, 783 A.2d 1085 ("In this [lost chance] case, no exceptions exist to excuse the plaintiff from producing expert medical testimony to prove her case. The alleged negligence was not gross, the medical condition was not obvious, and the injury and the defendant physician's connection with the injury was not obvious enough to allow a lay juror to form a reasonable belief as to the negligence of the defendant physician."), cert. denied, 258 Conn. 938, 786 A.2d 425 (2001). For the foregoing reasons, therefore, the plaintiff also could not prevail under a

lost chance theory without expert testimony. Accordingly, in the absence of any expert to testify as to the standard of care relating to any of her negligence allegations,[13] the trial court properly granted the defendants' motions for summary judgment.

The judgment is affirmed.

In this opinion ROGERS, C. J., and VERTEFEUILLE and ZARELLA, Js., concurred.

SCHALLER, J., dissenting. I agree with the majority that the trial court improperly viewed the complaint of the plaintiff, Susan Dimmock, as limited to allegations that expressly or implicitly concerned infection. I also agree with the majority's reasoning in discussing why de novo review is appropriate in this case. Although the majority takes no position on this issue, I believe that a de novo standard of review should be applied in this case. See *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 573 n.12, 864 A.2d 1 (2005) ("[t]he interpretation of pleadings is always a question of law for the court and . . . our interpretation of the pleadings therefore is plenary" [internal quotation marks omitted]). I further agree fully that "[i]n Connecticut, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Deming* v. *Nation-*

---

[13] In the hearing before the trial court on the plaintiff's request to amend her complaint, the plaintiff's counsel represented to the court that "[i]t was decided not to use an infection expert," and no expert regarding the infection was listed in the plaintiff's disclosure. The plaintiff does not claim in her appeal that no expert was needed to prove her infection related claim.

*wide Mutual Ins. Co.*, 279 Conn. 745, 778, 905 A.2d 623 (2006). I respectfully disagree, however, with the result and the reasoning of the majority opinion.

The crucial issue in this appeal is whether the plaintiff's proposed allegations concerning the defendants'[1] negligence (paragraph 34 [j] through [n] of the proposed amended complaint) arise from an entirely different set of facts than the allegations of the operative complaint, and, accordingly, are time barred because they do not relate back to the plaintiff's allegations in the original complaint.

The majority opinion accurately traces the allegations from the two original complaints into the operative complaint. See footnote 2 and part I of the majority opinion (explaining that plaintiff originally filed two complaints through two attorneys—David W. Bush and Gary J. Greene [Greene complaint]). In essence, the plaintiff relies principally on the allegations in paragraph 34 (r) and (s) of the operative complaint as the basis for the relation back of the new allegations in the proposed amended complaint. Those subparagraphs clearly had their origin in the Greene complaint, which did not concern infection. Paragraph thirty-four of the plaintiff's proposed amended complaint proposed the following new allegations:

"j. The [d]efendant[s] failed to adequately inform [the plaintiff] of all surgical options;

"k. In that the [d]efendants failed to adequately inform [the plaintiff] of all the surgical options in light of her history of smoking;

---

[1] The defendants in this case are Patrick F. Doherty and Frank M. Maletz, and the medical practice groups to which they respectively belong, Neurological Group, P.C. and Thames River Orthopedic Group, LLC. Although Lawrence and Memorial Hospital, Inc., also was named as a defendant, the plaintiff withdrew her claim against the hospital, and references to the defendants do not include the hospital.

"*l*. In that the [d]efendant[s] failed to perform a spinal fusion with instrumentation;

"m. In that the [d]efendant[s] failed to perform a spinal fusion with instrumentation in light of the [p]laintiff's medical history;

"n. In that the [d]efendant[s] failed to adequately monitor the [p]laintiff's ongoing back condition after the initial surgery and make the necessary recommendations for additional care and treatment, including additional attempts at surgical repair."

The plaintiff argues that the new allegations relate back to paragraph 34 (r) and (s) of the operative complaint, which alleged failure "to adequately and properly care for, treat, monitor, diagnose and supervise the plaintiff for problems with her back and post operative care" and failure "to adequately and properly assess and inform the plaintiff of the risks involved in the surgery . . . ." Attempting to read these allegations "contextually," the majority concludes that the operative allegations do not support the new allegations. The majority particularly expresses concern that the new allegations of an improperly performed spinal fusion "contradict" the earlier allegation of a spinal fusion that was alleged to have been performed improperly because there was no spinal instability.

The majority affirms the trial court's rejection of the proposed amendments because they are contradictory and represent a new theory of negligence. The majority reasons that, while our case law supports the pleading of alternative theories of negligence in general, it does not support the pleading of alternative theories that contradict previously pleaded theories. I disagree with this reasoning. Whether allegations contradict earlier allegations is not the principal inquiry. It is fair to say that all revised allegations involve *some* new facts and that all new allegations alter to some extent the eviden-

tiary requirements. The determinative factor, however, is whether the new allegations present "an entirely new and different factual situation . . . ." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 547, 590 A.2d 914 (1991), quoting *Sharp* v. *Mitchell*, 209 Conn. 59, 71–72, 546 A.2d 846 (1988). In this case, the factual situation, that is, whether a spinal fusion at L5-S1 was improperly performed, remains substantially the same for purposes of the proposed amendment.

The relation back doctrine has been explained by this court as follows: "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated." (Citations omitted; internal quotation marks omitted.) *Gurliacci* v. *Mayer*, supra, 218 Conn. 546–47. "Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving 'the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims . . . .' " *Barrett* v. *Dan-*

*bury Hospital,* 232 Conn. 242, 264, 654 A.2d 748 (1995), quoting *Gurliacci* v. *Mayer,* supra, 548.

In *Gurliacci,* we stated that "[w]e have previously recognized that our relation back doctrine is akin to rule 15 (c) of the Federal Rules of Civil Procedure . . . ." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer,* supra, 218 Conn. 547. Rule 15 (c) (1) (B) provides in pertinent part that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." As we recognized in *Gurliacci,* "[t]he policy behind rule 15 (c) is that a party, once notified of litigation based upon a particular transaction or occurrence, has been provided with all the notice that statutes of limitations are intended to afford. . . . Because rule 15 provides that an amendment relates back where the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims, is fully served." (Citations omitted; internal quotation marks omitted.) *Gurliacci* v. *Mayer,* supra, 547–48.

The majority opinion cites *Gurliacci* as authority for the proposition that allegations that assert an alternative basis for liability arising from the same facts can relate back to the original complaint. The reasoning of *Gurliacci* provides strong support for the plaintiff's position in this case. In *Gurliacci,* the plaintiff's original complaint alleged that the defendant had acted negligently in operating his automobile while he was intoxicated. Id., 546. The proposed amendment sought to add allegations that the defendant had acted either wilfully, wantonly or maliciously, or outside the scope of his employment. Id. In allowing the amendment under the

relation back doctrine, the court stated that the *"new allegations did not inject two different sets of circumstances and depend upon different facts . . . but rather amplified and expanded upon the previous allegations by setting forth alternative theories of liability.* The fact that the new allegations had the potential effect of taking the claim outside the operation of the fellow employee immunity rule does not negate the identity of the cause of action. . . . [The defendant] had adequate notice that a claim was being asserted against him arising out of the alleged motor vehicle accident." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 549.

All potential amendments to a complaint require that there be some new evidence presented. Thus, in *Gurliacci*, the amendment to the complaint would have required new evidence as to whether the defendant was acting either wilfully, wantonly or maliciously. Further, the amendment to the complaint would have required evidence as to whether the defendant was operating the motor vehicle outside the scope of his employment. Id. The fact that new evidence would be required in *Gurliacci* was not the determining factor as to whether the amendment would relate back to the original complaint. The amendment was allowed in *Gurliacci* in part because the defendant had adequate notice that a claim was being asserted against him arising out of the alleged motor vehicle accident and the amended complaint reiterated the negligence claim based on his operation of a motor vehicle. Id.

The *Gurliacci* court correctly focused on the factual situation rather than on the potentially contradictory nature of the original and new allegations. The new allegations, in fact, could have been viewed as inconsistent or even contradictory, had the nature of the allegations been the appropriate focus of the court's attention. The original allegations involved negligence *within the*

*scope of employment.* Id., 542. The new allegations involved a claim of actions that were wilful, wanton or malicious actions, or were *outside the scope of employment.* Id., 546. Clearly, the new allegations would present a different evidentiary situation from the original one. The court in *Gurliacci,* however, correctly concluded that "the new allegations did not inject two different sets of circumstances and depend on different facts . . . ." (Internal quotation marks omitted.) Id., 549. The court rejected the defendant's argument based on *Sharp* v. *Mitchell,* supra, 209 Conn. 73,[2] that "the change of focus from actions within the scope of employment to actions outside the scope of employment is of such a magnitude as to preclude a relation back for statute of limitations purposes." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer,* supra, 218 Conn. 548.

In the present case, the defendants had adequate notice that a claim was being asserted against them based on a claim of negligence in the performance of medical services culminating in a spinal fusion at L5-S1. They also had adequate notice that the claim concerned the condition of spinal stability following the surgery. While the new allegations did present a different configuration of the factual situation, they did not negate "the identity of the cause of action." (Internal quotation marks omitted.) Id., 549. The defendants had fair notice that the plaintiff's claim of negligence concerned the decision to undertake, manner of performance and results of the spinal fusion at L5-S1.

---

[2] In *Sharp,* we concluded that the statute of limitations barred the defendant's amended complaint alleging wrongful death based on negligent design and construction because it did not relate back to the defendant's original complaint alleging wrongful death based on negligent supervision because "[t]hese complaints involve two different sets of circumstances and depend on different facts to prove or disprove the allegations of a different basis of liability." *Sharp* v. *Mitchell,* supra, 209 Conn. 73.

The majority cites to numerous cases of this court involving the issue of whether new allegations relate back to the original complaint. My reading of those cases indicates that the analysis and outcomes were consistent with the reasoning of this dissenting opinion.[3] In *Sharp*, for example, the original allegations presented a theory of negligent supervision while the amended allegations presented a claim of negligent design and construction of the underground storage area, a claim that presented an entirely different factual situation. *Sharp* v. *Mitchell*, supra, 209 Conn. 73; see also footnote 2 of this dissenting opinion.

The plaintiff in this case relied on *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 788 A.2d 83 (2002), which, in my view, offers persuasive support for the plaintiff's position. The majority dismisses the impor-

[3] The majority cites *Alswanger* v. *Smego*, 257 Conn. 58, 61, 776 A.2d 444 (2001), and *Keenan* v. *Yale New Haven Hospital*, 167 Conn. 284, 285–86, 355 A.2d 253 (1974), to support the statement: "we are unaware of any case in which this court has held that new allegations that replace and *directly contradict* those in the operative complaint have been deemed to amplify, and hence relate back, to those in the operative complaint." (Emphasis in original.) A close reading of *Alswanger* and *Keenan*, however, indicates that we examine the *factual underpinning* of the proposed cause of action in order to determine whether the proposed cause of action relates back to the original cause of action.

Indeed, in *Alswanger*, we concluded: "[i]n the present case, we are faced with an amended complaint, filed after the statute of limitations had expired, alleging an act of negligence based on a different set of facts from that alleged in the original complaint." *Alswanger* v. *Smego*, supra, 257 Conn. 66. In *Keenan*, we concluded: "[a]cts amounting to negligence and acts amounting to assault and battery, not related to lack of due care, do not constitute a single group of facts. They are separate and distinct. It is clear that the count alleging an assault, as made more specific, raises a cause of action separate and distinct from the negligence originally pleaded." *Keenan* v. *Yale New Haven Hospital*, supra, 167 Conn. 286. These cases, as well as *Gurliacci* v. *Mayer*, supra, 218 Conn. 531, *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 788 A.2d 83 (2002), and *Sharp* v. *Mitchell*, supra, 209 Conn. 59, which I discuss in the text of this dissenting opinion, indicate that whether the new cause of action *contradicts* the original cause of action is not relevant to the determination of whether the new cause of action relates back to the original cause of action.

tance of *Wagner*, however, on the ground that the original and the new allegations presented theories that were consistent. In fact, the court in that case readily could have noted an inconsistency between the old and new theories. Nevertheless, because consistency is not the key to understanding the relation back doctrine, the court looked, instead, to whether the factual situation presented by the amendments was new and entirely different from the original one. Id., 130. On this score, the focus of our determination in *Wagner* was properly on the factual situation. We concluded that "[t]he allegations found in [the] proposed [complaint], which pertain to the issue of design defect with respect to the back-up alarm, arise out of the same set of facts set forth in the [original] complaint, namely, an injury caused by a defective forklift. Consequently, the [proposed complaint] contain[s] allegations that arise from the same cause of action stated in the [original] complaint, and, thus . . . are not barred by the statute of limitations." Id. Similarly, in the present case, both the operative and the new allegations involve an injury caused by an improper spinal fusion at L5-S1.

For the foregoing reasons, I conclude that the trial court improperly determined that the amended complaint presented claims that did not relate back to those in the operative complaint and, therefore, was time barred. I would reverse the summary judgment rendered by the trial court. Accordingly, I would reverse the judgment as to the other two issues raised on appeal and remand the case to the trial court for further proceedings, including an order granting the motion to amend the complaint. This disposition would represent a broad and realistic interpretation of the pleadings that would promote substantial justice in this case.