# SUZANNE M. KAIRON *v.* BRUCE E. BURNHAM ET AL.
## (AC 30583)

DiPentima, Robinson and Peters, Js.

Argued February 5—officially released April 6, 2010

*Ronald W. Kutz,* with whom, on the brief, was *Joseph E. Prokop,* for the appellant (plaintiff).

*Michael D. Neubert,* with whom was *Gretchen G. Randall,* for the appellees (defendants).

*Opinion*

PETERS, J. Because the requirements for proper medical diagnosis and treatment ordinarily are not within the common knowledge of laypersons, a former patient who wishes to pursue a medical malpractice action generally must present expert testimony to the trier of fact. *Dimmock* v. *Lawrence & Memorial Hospital, Inc.,* 286 Conn. 789, 813, 945 A.2d 955 (2008). To be admissible, such testimony must comply with the requirements for reliability and relevance established in *State* v. *Porter,* 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). In the present case, the trial court, after finding that the testimony proffered by the former patient's expert witness was neither reliable nor relevant, granted the physician's motion to preclude the testimony from the trial and consequently granted the physician's motion for summary judgment. The former patient has appealed. We affirm the judgment of the court.

On January 28, 2005, the plaintiff, Suzanne M. Kairon, filed a multicount complaint charging the defendant Bruce E. Burnham,[1] a plastic surgeon, with negligence,

---

[1] Because the codefendant, Plastic Surgery Center, Inc., appears to have no independent role in this litigation, we refer to Burnham as the sole defendant.

breach of contract, breach of express warranty, negligent infliction of emotional distress, breach of implied warranty and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.[2] After an evidentiary hearing, the trial court, *Domnarski, J.*, granted the defendant's motion in limine to preclude the testimony of the plaintiff's expert witness, Carlos Benavides, a board certified otolaryngologist. Although the court rejected the defendant's claim that Benavides was unqualified to testify because he was not a "similar health care provider" as required by General Statutes § 52-184c,[3] the court held that his testimony did not

[2] The count charging a violation of the Connecticut Unfair Trade Practices Act was stricken by the court, *Stengel, J.*, on September 25, 2005.

[3] General Statutes § 52-184c provides in relevant part: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers. . . .

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be

satisfy *Porter* standards for scientific reliability.[4] The court then granted the defendant's motion for summary judgment.[5] The plaintiff has appealed from this judgment.

The plaintiff's appeal raises two issues. She argues that the court (1) misapplied the standard established by *State* v. *Porter*, supra, 241 Conn. 57, and (2) improperly held the *Porter* hearing on the eve of trial. We disagree with both claims.[6]

---

as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

[4] In *State* v. *Porter*, supra, 241 Conn. 57, our Supreme Court directed trial judges, in admitting scientific evidence, to serve a gatekeeper function in determining whether such evidence will assist the trier of fact. Id., 73. The rule of *Porter* has been codified in § 7-2 of the Connecticut Code of Evidence, which provides that "[a] witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

[5] The defendant's motion for summary judgment alleged that the remaining counts of the plaintiff's complaint, once the malpractice count could no longer be pursued, were based on breach of contract. The defendant noted the absence of any allegations that he had assured or warranted any specific result in the parties' agreement for the face-lift that he performed for the plaintiff.

Although the motion for summary judgment did not refer to the stricken count nine, that count was not repleaded. The plaintiff, therefore, has appealed from a final judgment. See *Anderson* v. *Gordon, Muir & Foley, LLP*, 108 Conn. App. 410, 414 n.6, 949 A.2d 488, cert. denied, 289 Conn. 927, 958 A.2d 156 (2008).

[6] We reject the defendant's contention that the plaintiff has not provided an adequate record for the presentation of her claims on appeal. See Practice Book §§ 60-5 and 64-1. We note that the court record contains a signed transcript of the November 20, 2008 hearing at which the court granted the defendant's motion to preclude. The appendix to the plaintiff's brief contains an unsigned transcript of the November 21, 2008 proceeding at which the court stated, for the record, that it had denied the plaintiff's motion for reargument, and that it was denying the plaintiff's motion for a continuance, granting the defendant permission to file a motion for summary judgment and granting the defendant's motion for summary judgment. In the absence of a claim of inaccuracy in any of this documentation, we have the authority to consider the merits of the plaintiff's claims on appeal. *Robinson* v. *Robinson*, 103 Conn. App. 69, 74 n.3, 927 A.2d 364 (2007).

I

## THE MERITS OF THE *PORTER* RULING

Our review of the merits of the court's evidentiary ruling excluding the testimony of her expert witness is governed by well established principles. "Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *St. John*, 282 Conn. 260, 270, 919 A.2d 452 (2007). We can find no abuse of discretion in this case.

Many of the facts underlying the plaintiff's malpractice claim are undisputed. On January 30, 2003, the defendant performed a mini face-lift on the plaintiff. From April, 2004, through January, 2006, the plaintiff consulted Benavides for treatment of facial lesions and swelling that she and Benavides attributed to the surgery performed by the defendant.

At the hearing on the defendant's motion to preclude Benavides' testimony, Benavides testified that, although the operative note describing the surgical procedure used by the defendant for the plaintiff's face-lift indicated the use of appropriate PDS sutures, he believed that a nonapproved type of suture had in fact been used, had become embedded in the plaintiff's face and had caused her to suffer continued facial problems. He based his opinion on the severity and the location of the plaintiff's facial problems, which manifested a "linear reaction" to her surgery. In his view, such a reaction would be highly unusual if the defendant had used the sutures described in the operative note. He did not, however, dispute the report of another plastic surgeon,

Laurence Kirwan, that even appropriate PDS sutures occasionally may cause a patient to suffer adverse reactions. He also acknowledged that a pathology study that he had ordered for the plaintiff's face found only normal skin and no foreign body.

At the conclusion of the hearing, the court held that "Benavides' opinion that [the defendant had] used unacceptable suture material is not reliable or relevant and does not meet the gatekeeping requirements of . . . *Porter.*" With respect to reliability, the court found "a lack of reasoning or methodology which supports Dr. Benavides' conclusion that only the use of unacceptable sutures could cause the plaintiff's condition." In addition, the court noted that use of PDS sutures was not a substantial part of Benavides' practice and held that this fact "affects the reliability of his opinions regarding whether PDS sutures allegedly used could have caused the plaintiff's condition." Finally, on the issue of relevance, the court noted that, at his pretrial deposition, Benavides had testified that his opinion, "while not pure speculation, was speculation."

The plaintiff argues that the court's ruling was an abuse of its discretion because, in her view, Benavides' testimony satisfied the requirements of *State* v. *Porter,* supra, 241 Conn. 57, as codified in § 7-2 of the Connecticut Code of Evidence. She maintains that his testimony scientifically established that she had suffered an adverse reaction to the inappropriate sutures that the defendant had used in performing her face-lift. This argument assumes that it is irrelevant whether, in fact, the defendant had used sutures that were surgically inappropriate. Benavides admittedly could offer no independent evidence on this crucial issue. Furthermore, it fails to take into account Benavides' failure to dispute Kirwan's opinion that even appropriate suture materials occasionally caused patients to suffer adverse reactions.

Viewing the record as a whole, we are not persuaded that the court abused its discretion in finding that Benavides had no reasonable scientific basis for opining that the defendant negligently had performed facial surgery on the plaintiff. The fact that Benavides was the plaintiff's treating physician gave him expertise to describe the plaintiff's state of health, but it did not relieve him of the burden of articulating a persuasive theory scientifically linking her medical problems to professional malpractice on the part of the defendant. Our Supreme Court, in State v. Porter, supra, 241 Conn. 84, stated that "[t]he factors a trial court will find helpful in determining whether the underlying theories and techniques of the proffered evidence are scientifically reliable will differ with each particular case." (Internal quotation marks omitted.) The case on which the trial court relied, however, E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995), pointedly held it was improper for a trial court to assume that one of several possible causes could have produced injury. Id., 558–60. That precedent is persuasive here.

## II

### THE TIMING OF THE PORTER HEARING

The plaintiff also argues that it was improper for the court to delay conducting a Porter hearing until the eve of trial, at a time when the jury had been picked and it was too late for the plaintiff to find an alternate expert witness. The plaintiff acknowledges that, to prevail, she again must establish that the court's action was an abuse of its discretion.

The plaintiff's argument on this issue is confined to the recital of the undisputed history of the present litigation. After a timely disclosure, Benavides was deposed on January 10, 2007, a motion to preclude his testimony was filed on November 4, 2008, and a hearing on that motion was held on November 19, 2008.

A review of the January, 2007 deposition demonstrates that the defendant's questioning of Benavides gave the plaintiff fair warning then that, at or before trial, he would challenge Benavides' ability to present the expert testimony that the plaintiff would need to prevail. Indeed, the plaintiff does not argue to the contrary. It follows that she has failed to establish how she was prejudiced by the timing of the motion to preclude. Moreover, there is neither a claim nor evidence, anywhere in the record, that the timing of the hearing on the motion violated established case management procedures in the Superior Court.

In sum, we disagree with the plaintiff's claims, one substantive and one procedural, that the court abused its discretion in granting the defendant's motion to preclude the testimony of her sole proffered expert witness. It follows that the court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.